THE EMPLOYMENT LAW GROUP, P.C.
David Scher (Bar No. CA 184562)
DScher@employmentlawgroup.com
R. Scott Oswald, Esq. (to be admitted *pro hac vice*)
soswald@employmentlawgroup.com
888 17TH STREET, NW, SUITE 900
WASHINGTON, DC  20006
Telephone:   (202) 331-2883
Facsimile:   (202) 261-2835

FILED
CLERK, U.S DISTRICT COURT

MAY 3 1 2016

CENTRAL DISTRICT OF CALIFORNIA
BY                            DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

| | |
|---|---|
| United States of America *ex rel*, [UNDER SEAL] Plaintiff, v. [UNDER SEAL], Defendant. | CV 16 - 03767 PSG (FFMx) Case No. _____ COMPLAINT FILED UNDER SEAL Pursuant to 31 U.S.C. § 3729 (False Claims Act) JURY TRIAL DEMANDED |

RECEIVED
CLERK, U.S. DISTRICT COURT

MAY 2 7 2016

CENTRAL DISTRICT OF CALIFORNIA
BY                            DEPUTY

PAID

MAY 3 1 2016

Clerk, US District Court
COURT 4612

FALSE CLAIM ACT *QUI TAM* COMPLAINT UNDER SEAL

CASE NO. _____

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

FILED
CLERK U.S DISTRICT COURT

MAY 3 1 2016

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

United States of America *ex rel*,
REGIE SALGADO
13944 North State Hwy 21
Cadet, Missouri 63630,

MELINDA ZAMBRANO
1700 Fernwood Drive
Plano, Texas 75075,

Plaintiff,

v.

TRUCONNECT
1149 S. Hill Street
Los Angeles, California   90015

NATHAN JOHNSON
1149 S. Hill Street
Los Angeles, California   90015

MATTHEW JOHNSON
1149 S. Hill Street
Los Angeles, California   90015

Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CV16-03767**

Case No. _____

**COMPLAINT**
**FILED UNDER SEAL**
**Pursuant to 31 U.S.C. § 3729**

Pursuant to 31 U.S.C. § 3729
*et seq.*, the California False
Claims Act, Cal. Gov't code
§ 12650 *et seq.*, and the Common
Law of California

**JURY TRIAL DEMANDED**

RECEIVED
CLERK, U.S. DISTRICT COURT

MAY 2 7 2016

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

- 2 -

CASE NO. _____

**The Employment Law Group, P.C.**
888 17th Street, NW, Suite 900
Washington, D.C. 20006

## Introduction

1.     Qui tam relators Regie Salgado and Melinda Zambrano (collectively, "Relators"), by and through their attorneys, individually and on behalf of the United States of America and the state of California file this complaint against TruConnect, Matthew Johnson, and Nathan Johnson to recover damages, penalties, and attorneys' fees for multiple violations of the federal False Claims Act, 31 U.S.C §§ 3729 *et seq.* and § 3730(h), the California False Claims Act, Cal. Gov't Code § 12651 and § 12653, and wrongful discharge in violation of California public policy.

2.     Established in 1985, the Lifeline program originally provided discounts on phone services, including landline service, for qualified low-income consumers. In 2005, the Lifeline program extended to qualified low-income consumers discounts to pre-paid wireless services.

3.     The Lifeline program is paid for and administered by the federal and state governments. The Lifeline program subsidizes cellular service through the federal and state governments.

4.     TruConnect, a national provider of wireless voice, messaging, and data services, is a Lifeline provider. TruConnect receives revenue from the Lifeline program by falsifying the usage data requirement set out by the Lifeline program

CASE NO. _____

and by failing to adhere to other program requirements governing customer acquisition and data reporting and collection.

5.     In or around June 2015, Salgado conducted an investigation on "broken phones" that kept ringing. The phones were not assigned to any subscribers. Salgado requested to review the usage data.  Salgado shared his findings with Zambrano. Ultimately, Relators determined that 70,433 phones between June and July 2015 had less than one minute of usage and no Short Message Service ("SMS") usage.

6.     Under the Lifeline program, TruConnect receives $9.25 per month for each connected phone from the Federal Communications Commission ("FCC") for falsely stating subscribers are meeting usage requirements set out by the FCC. Likewise, the state of California pays TruConnect $12.65 per month for each Lifeline subscriber towards monthly service as well as $39.00 for an initial "link up" fee.

7.     The Lifeline program requires a consumer to "use" the service at least once every sixty days for TruConnect to collect payment from the FCC. TruConnect is required to deactivate any accounts that do not meet the usage requirements after sixty days.

8.     In an effort to circumvent the FCC's usage requirements, TruConnect pushes "robo-calls" to Lifeline accounts that do not receive calls or texts during a

**The Employment Law Group, P.C.**
888 17th Street, NW, Suite 900
Washington, D.C. 20006

- 4 -

CASE NO. _____

given period. TruConnect then counts the "robo-calls" as usage and bills the government for these accounts.

9.      Along similar lines, TruConnect fails to comply with program requirements governing the acquisition of customers and data reporting.

10.     Every month, TruConnect, in order to receive reimbursement from the government, falsely certifies that it, "[I]s in compliance with all of the Lifeline program rules, and, to the extent required, have obtained valid certifications for each subscriber for whom my company seeks reimbursement."

11.     After Salgado and Zambrano discovered and protested TruConnect's fraudulent conduct, TruConnect retaliated by terminating Salgado and Zambrano in violation of 31 U.S.C. § 3730(h), California Government Code § 12653, and the common law of California.

12.     Since its inception in 2011, TruConnect has falsely collected payment from the government under the Lifeline program in the amount exceeding $92.5 million.

13.     TruConnect knowingly submitted numerous fraudulent usage minutes from robo-calls in order to bill the government and collect false payment for the defunct phones.

## Jurisdiction and Venue

14.     This Court has subject matter jurisdiction over this action under 31 U.S.C. §§ 3730 and 3732.

- 5 -

CASE NO. _____

15.     This Court has personal jurisdiction over TruConnect pursuant to 31 U.S.C. 3732(a) because TruConnect transacts business in this judicial district.

16.     Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and under 28 U.S.C. § 1391(c) because TruConnect transacts business in this judicial district.

### Parties

**Relators**

17.     Salgado resides at 13944 North State Hwy 21 Cadet, Missouri 63630.

18.     Zambrano resides at 1700 Fernwood Dr., Plano, Texas 75075.

19.     Both Salgado and Zambrano represent an "original source" of this information within the meaning 31 U.S.C. § 3730(e)(4)(B),  and state that to their knowledge, the information contained herein has not been publicly disclosed.

20.     Salgado began working for TruConnect on April 20, 2015 as the Director of Inventory Operations.  As the Director of Inventory Operations, Salgado helped TruConnect automate its distribution business. Among other duties, Salgado installed a distribution platform and an operational reporting system to identify stock keeping units ("SKU s") during the distribution process.

21.     Zambrano began working for TruConnect on March 16, 2015 as the Vice President of Products.  As the Vice President of Products, Zambrano made high volume purchases of mobile telephone handsets and Subscriber Identity Module ("SIM") cards.  Zambrano was Salgado's boss at TruConnect.

**The Employment Law Group, P.C.**
888 17th Street, NW, Suite 900
Washington, D.C. 20006

CASE NO. _____

22.     Salgado and Zambrano were employed by TruConnect until July 24, 2015, when TruConnect terminated their employment.

**Defendants**

23.     TruConnect is a mobile virtual network operator ("MVNO"), a provider of wireless voice, messaging, and data services.

24.     TruConnect is headquartered at 1149 S. Hill St., Los Angeles, California 90015.

25.     TruConnect has provided wireless voice, messaging, and data services since its foundation in 2011.

26.     TruConnect is a "Lifeline Provider."  As discussed more fully below, the Lifeline program is a program by which State and Federal government programs subsidize cellular service for low income families.

27.     Through the Lifeline program, TruConnect provides wireless service to qualified low income families primarily through SprintPCS and T-Mobile.

28.     Matthew Johnson and Nathan Johnson are brothers and joint CEOs of TruConnect and exercise comprehensive control over the company, including its billing practices.

29.     Matthew Johnson and Nathan Johnson work out of TruConnect's offices at 1149 S. Hill Street Los Angeles, California 90015.

30.     Under the direction of Matthew Johnson and Nathan Johnson from their Los Angeles office, TruConnect has and continues to falsely bill the

- 7 -

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

CASE NO. _____

government for phones not in use and falsely represents that it complies with the Lifeline regulations set out by the FCC.

## **Factual Allegations**

**The Lifeline Program**

31.   The Lifeline program originally provided landline phone service to qualified low income families.

32.   In 2005, the FCC extended Lifeline's services to cover pre-paid wireless services to qualified low income families.

33.   To participate in the Lifeline program, a potential subscriber must have an income that is at or below 135% of the federal Poverty Guidelines or receive aid from one of the federal assistance programs, including but not limited to, Medicaid, Supplemental Nutrition Assistance Program, Federal Public Housing Assistance, and Supplemental Security Income, among others.

34.   Under 47 C.F.R. § 54.410(a) and (b) carriers like TruConnect must certify subscribers are eligible to participate in the Lifeline program. Carriers must confirm subscribers meet the low income requirements and complete enrollment steps and certification. Carriers cannot be reimbursed for a Lifeline subscriber unless the carrier has received certification of eligibility.

35.   A subscriber must provide his or her address, date of birth, social security number, and individuals in his or her household.

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

- 8 -

CASE NO. _____

36.     Carriers of the Lifeline program must re-certify subscribers annually.

37.     Under 47 C.F.R. § 54.41(b)(2) a state provider of the Lifeline program must determine a subscriber's eligibility before the carrier can seek reimbursement.

38.     Federal laws prohibit subscribers from receiving more than one Lifeline discount per household.

39.     Under 47 C.F.R. § 54.404(a) the Lifeline program requires TruConnect to be state certified. A valid certification includes a comprehensive system to prevent duplicative Lifeline support. The comprehensive system must also incorporate information from approved telecommunications carriers that provide low-income support in the state and their subscribers.

40.     If a carrier such as TruConnect does not provide valid certification under 47 C.F.R. § 54.404(a),  then the carrier must comply with regulations under 47 C.F.R. § 54.404(b), which require carriers like TruConnect to query the National Lifeline Accountability Database to determine if a Lifeline subscriber already receives service from another carrier. Under this same regulation, TruConnect cannot seek reimbursement for service to a prospective subscriber for another subscriber at the same residential address and TruConnect must update a subscriber's information in the Database within ten business days of receiving any change to personal information.

41.     TruConnect must also de-enroll a subscriber within one business day of a subscriber de-enrolling in the Lifeline Program, and TruConnect must retain

- 9 -

CASE NO. _____

subscriber documentation to prove it certified subscriber eligibility for purposes of production during investigations or audits.

42.     In order for a provider like TruConnect to claim reimbursement from the government, the phone must be used by a subscriber.

43.     Under 47 C.F.R. § 54.407(c)(2) , the following constitutes "using" the service with the last sixty days: (i) completion of an outbound call,  (ii) purchasing minutes from the eligible communication carrier to add to the subscriber's  service plan, (iii) answering an incoming call from a party other than the eligible telecommunications carrier or the eligible telecommunications carrier's agent or representative; or (iv) responding to direct contact from the eligible communications carrier and confirming that he or she wants to continue receiving the Lifeline service.

44.     Under 47 C.F.R. § 54.405 (e)(3) a carrier cannot collect the monthly Lifeline fee if the Lifeline subscriber fails to meet "usage" requirements set out in 47 C.F.R. § 54.407(c)(2).

45.     A carrier like TruConnect certifies it complies with the regulations in 47 C.F.R. § 54.407(c)(2) and the carrier has obtained valid certification for subscribers when a reimbursement request is submitted.

46.     Carriers must file FCC Form 497 each month to receive reimbursement for each Lifeline subscriber.  For every Lifeline subscriber TruConnect claims it receives $9.25 per month.

- 10 -

CASE NO. _____

**The Employment Law Group, P.C.**
888 17th Street, NW, Suite 900
Washington, D.C. 20006

47.   Form 497 states, "I certify that my company is in compliance with all of the Lifeline program rules, and, to the extent required, have obtained valid certifications for each subscriber for whom my company seeks reimbursement."

I certify that my company will pass through the full amount of all Non-Tribal and Tribal federal Lifeline support for which it seeks reimbursement, as well as all applicable intrastate Lifeline support, to all qualifying low-income subscribers by an equivalent reduction in the subscriber's monthly bill for voice telephony service, or by offering a pre-paid wireless plan that includes a set number of minutes of use per month

I certify that my company is in compliance with all of the Lifeline program rules, and, to the extent required, have obtained valid certifications for each subscriber for whom my company seeks reimbursement

Based on the information known to me or provided to me by employees responsible for the preparation of the data being submitted, I certify under penalty of perjury that the data contained in this form has been examined and reviewed and is true, accurate, and complete

I acknowledge the Fund Administrator's authority to request additional supporting information as may be necessary

Persons willfully making false statements on this form can be punished by fine or imprisonment under Title 18 of the United States Code, 18 U.S.C. 1001

48.   Under 47 C.F.R. § 54.417(a) carriers such as TruConnect must preserve records documenting compliance with Commission and state requirements designated under the Lifeline program for three preceding calendar years and must provide documentation to Commission when requested.

49.   Under the Lifeline program carriers are obligated to notify subscribers of impending termination in writing.

**Payments to TruConnect**

50.   Under the direction of Matthew Johnson and Nathan Johnson, TruConnect currently enrolls 330,000 Lifeline subscribers. The FCC pays $9.25 per month for each subscriber. The federal government reimburses TruConnect upwards of $3,000,000 for 330,000 Lifeline subscribers each month.

- 11 -

CASE NO. _____

51.     Under the direction of Matthew Johnson and Nathan Johnson TruConnect currently enrolls 195,751 a Lifeline subscribers in California. The California Public Utilities Commission subsidizes $12.65 each month for each Lifeline subscriber. The state of California reimburses TruConnect more than $2,000,000 for Lifeline subscribers in California each month.

52.     Combined damages under the False Claims Act from the federal government and California come to approximately $66.3 million for one year of TruConnect's billings under the direction of Matthew Johnson and Nathan Johnson. This number does not include the $39 link up fee California previously paid.

53.     The federal government reimbursed TruConnect approximately $3,866,500 between June and July 2015, a thirty eight day span. California reimbursed TruConnect approximately $3,136,583.  Within this thirty eight day span TruConnect was paid $7,003,083 for all of its Lifeline subscribers.

54.     Between June and July 2015 the FCC paid TruConnect $651,597 for phones with zero to one minutes of usage.  Over one year the FCC pays $7,891,173 to TruConnect for phones with zero to one minute of usage.

55.     Between June and July 2015, California paid TruConnect $891,103.95 for 70,443 phones with zero to one minute of usage. This is nineteen percent of the 369,081 records analyzed.  Over the course of year, this would be $10,693,247.

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

CASE NO. _____

56.     Combined damages under the False Claims Act from the federal government and California come to on or about $18.5 million in damages for one year of TruConnect's billing for phones with zero to one minute of usage.   This number does not include the $39 link up fee California used to pay.

**TruConnect's Business Model**

57.     TruConnect is a provider of wireless voice, messaging, and data services. TruConnect is a mobile virtual network operator ("MVNO").

58.     TruConnect is headquartered in Los Angeles and TruConnect's main client base is in California. TruConnect has about 330,000 total Lifeline subscribers.

59.     The Lifeline program provides federal and state government subsidized cell service to providers like TruConnect.

60.     Budget Mobile, based in Shreveport, Louisiana, is a similar company to TruConnect. Budget Mobile provides wireless voice, messaging and data services. Budget Mobile also participates in the Lifeline program.

61.     Plintron is a mobile virtual network enabler  ("MVNE"). Plintron acts as a broker between TruConnect and Budget Mobile to companies that provide mobile services over its network such as T-Mobile. Plintron utilizes telecommunications networks like T-Mobile for use by its MVNO customers.

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

62.    TruConnect provides the subscriber base and retail services for Plintron.  TruConnect primarily purchases SIM cards from Plintron. SIM cards can be activated without inserting them into a phone at all.

**Acquiring Customers**

63.    TruConnect hires "street teams" to hand out mobile phones including but not limited to, outside of Unemployment Insurance offices and Social Security offices to obtain customers. The street teams do not have storefronts.

64.    The street teams hand out "live" phones. The live phones have SIM cards already activated in the phone.

65.    The street team only requires proof of a low income, but proof of food stamps is sufficient to be eligible for a phone.

66.    The street teams do not follow Lifeline certification regulations.  The regulations require proper certification of Lifeline subscribers. Lifeline subscribers must provide to carriers their name, birth date, address, number of people in his or her household, social security number, proof of income that is at or below 135% of the federal Poverty Guidelines or receive aid from one of the federal assistance programs. If a carrier does not verify certification under 47 C.F.R. § 54.404(a) then a carrier must investigate if there is more than one Lifeline subscriber per household and query the National Lifeline Accountability Database to determine if

- 14 -

the potential subscriber has another account with a different carrier. The street teams do none of this.

67.     The teams do not pay for the phones when delivered to subscribers; the teams only distribute the phones to the subscribers. The street team is paid whether the phone is turned on or off. TruConnect only needs to show the phone is active.

68.     After a subscriber is in possession of a TruConnect phone the subscriber is given a subscriber identity and calls are sent to the phone. A subscriber identity is a phone number which is attached to the SIM card and account number.

69.     TruConnect does not follow up with subscribers after phones are distributed by the street teams. Monthly statements are not sent to subscribers.

70.     According to FCC guidelines, TruConnect is required to turn off unused phones. TruConnect phones are not being turned off because robo-calls and text messages are being pumped to the phones to show fraudulent usage. If the phones are showing usage, TruConnect can avoid having to shut off the phone.

**Relators Join TruConnect**

71.     On March 16, 2016, Zambrano began working at TruConnect. Zambrano's primary focus was on high-volume purchases of mobile phone

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

handsets and SIM cards. Zambrano reported to Eric Milhizer, the Chief Marketing Officer, and Todd Wallace, the Chief Operating Officer.

72.     Before joining TruConnect, Zambrano worked at PrimeCoPersonal Communications from 1998 to 2000 doing similar work. Zambrano also worked at MetroPCS from 2001 to 2006.

73.     Zambrano primarily used Ingram Micro as a vendor source for phones. TruConnect pressured Zambrano to use other companies to make purchases for phones that had connections with TruConnect management.

74.     In or about April 2015, Zambrano recruited Salgado to work at TruConnect..

75.     Relators previously worked together at MetroPCS.

76.     Prior to joining TruConnect Salgado worked for PrimeCoPCS from 1998 to 2000, Verizon from 2000 to 2001, and MetroPCS from 2000 to 2006. Salgado has worked in telecommunications and studied pre-pay telecommunications for the last fifteen to seventeen years.

**Relators' Fraud Investigation and Findings**

77.     In or about July 2015, Salgado was examining six "broken phones" that did not belong to any subscribers.  During his examination, unique robo-call numbers continued to call the phones while in Salgado's possession.

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

CASE NO. _____

78.    Salgado thought there was a defect with the phones that allowed the phones to continue operating after deactivation but Salgado confirmed with Luke Duval from Ingram Micro that the phones were activated.

79.    Ingram Micro is a phone vendor from which TruConnect purchased phones.

80.    Phones should not have remained active once the phones no longer belonged to a subscriber.

81.    To investigate, Salgado requested and received current and historical usage data from Rick Berger, the Vice President of Revenue Assurance at TruConnect.

82.    Salgado analyzed the data and discovered that of 60,000 Lifeline subscribers, 8,800 showed no calls or text messages for over a year but were still identified by TruConnect as "active."

83.    If TruConnect considers a phone "active," it will bill the government for that phone.

84.    Forty five percent of subscribers were near the sixty day non-usage cut off.

85.    Additionally, Salgado analyzed subscriber data back from June to July 2015, a thirty eight day time span consisting of 369,081 total phone records. Out of 369,081 users, 50,460 or 13.67% of all subscribes show zero to one minutes of usage and no texting.

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

- 17 -

CASE NO. _____

86.     Within the thirty eight day time span 70,443 records had one minute or less usage. Nineteen percent of all subscribers had zero to one minutes of usage.

| | A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | provider_id | billitem_id | mdn | data_sourc | activation_Date | billing_activation_Date | disconnect_date | sales_team | MOU | DATA | SMS | MMS | FTR |
| 70424 | 8 | 3885766 | 8.19E+09 | S | 5/19/15 14:19 | 5/19/15 14:20 | NULL | P4C Global | 1 | 0 | 0 | 0 | 0 |
| 70425 | 8 | 3886254 | 5.1E+09 | S | 5/19/15 14:33 | 5/19/15 15:40 | NULL | PayGo | 1 | 0 | 0 | 0 | 0 |
| 70426 | 8 | 3979991 | 7.15E+09 | S | 6/16/15 22:37 | 6/16/15 22:39 | NULL | Hispanic Te | 1 | 0 | 0 | 0 | 0 |
| 70427 | 8 | 3709526 | 4.42E+09 | S | 3/16/15 0:00 | 3/16/15 20:27 | NULL | PayGo | 1 | 0 | 0 | 0 | 0 |
| 70428 | 8 | 3473507 | 3.11E+09 | S | 12/16/14 0:00 | 12/16/14 22:06 | NULL | AEC | 1 | 0 | 0 | 0 | 0 |
| 70429 | 8 | 3603641 | 5.59E+09 | S | 1/27/15 0:00 | 1/27/15 1:44 | NULL | PayGo | 1 | 0 | 0 | 0 | 0 |
| 70430 | 8 | 3955284 | 7.6E+09 | S | 6/10/15 14:24 | 6/10/15 14:25 | NULL | Cymtron | 1 | 0 | 0 | 1 | 0 |
| 70431 | 8 | 3912607 | 9.51E+09 | S | 5/27/15 14:36 | 5/27/15 14:52 | 00.00.0 | PayGo | 1 | 0 | 1 | 0 | 0 |
| 70432 | 8 | 3921632 | 7.14E+09 | S | 6/13/15 0:00 | 6/13/15 5:14 | NULL | TOP | 1 | 0 | 0 | 0 | 0 |
| 70433 | 8 | 3941467 | 2.09E+09 | S | 6/4/15 17:15 | 6/4/15 17:19 | 00.00.0 | PayGo | 1 | 0 | 0 | 0 | 0 |
| 70434 | 8 | 3639800 | 7.47E+09 | S | 2/10/15 0:00 | 2/10/15 10:43 | 00.00.0 | P4C Global | 1 | 0 | 4 | 0 | 0 |
| 70435 | 8 | 3849185 | 9.1E+09 | S | 5/10/15 0:00 | 5/10/15 23:39 | NULL | White Inves | 1 | 0 | 6 | 0 | 0 |
| 70436 | 8 | 3878631 | 5.6E+09 | S | 5/30/15 0:00 | 5/30/15 5:27 | NULL | Center Stre | 1 | 0 | 0 | 0 | 0 |
| 70437 | 8 | 3976427 | 4.24E+09 | S | 6/16/15 13:53 | 6/16/15 13:54 | NULL | Hispanic Te | 1 | 0 | 0 | 0 | 0 |
| 70438 | 8 | 3987766 | 4.25E+09 | S | 6/18/15 15:44 | 6/18/15 15:48 | NULL | Panorama I | 1 | 0 | 0 | 0 | 0 |
| 70439 | 8 | 3919541 | 5.6E+09 | S | 6/13/15 0:00 | 6/13/15 5:06 | NULL | TOP | 1 | 0 | 0 | 0 | 0 |
| 70440 | 8 | 3871686 | 8.18E+09 | S | 5/14/15 14:23 | 5/14/15 14:24 | 00.00.0 | P4C Global | 1 | 0 | 1 | 0 | 0 |
| 70441 | 8 | 3820708 | 8.58E+09 | S | 4/28/15 0:00 | 4/28/15 13:10 | 00.00.0 | PayGo | 1 | 0 | 0 | 0 | 0 |
| 70442 | 8 | 3982677 | 5.62E+09 | S | 6/17/15 16:15 | 6/17/15 16:16 | NULL | TOP | 1 | 0 | 0 | 0 | 0 |
| 70443 | 8 | 3491099 | 6.61E+09 | S | 1/5/15 0:00 | 1/5/15 16:38 | NULL | PayGo | 1 | 0 | 0 | 0 | 0 |
| 70444 | 8 | 3975351 | 2.09E+09 | S | 6/15/15 21:41 | 6/15/15 21:41 | NULL | Center Stre | 1 | 0 | 0 | 0 | 0 |
| 70445 | 8 | 3607755 | 7.61E+09 | S | 1/30/15 0:00 | 1/30/15 3:38 | NULL | Cymtron | 1.016667 | 0 | 0 | 0 | 0 |
| 70446 | 8 | 3666630 | 8.19E+09 | S | 2/24/15 0:00 | 2/24/15 19:56 | NULL | PayGo | 1.016667 | 0 | 0 | 0 | 0 |
| 70447 | 8 | 3451126 | 9.09E+09 | S | 11/19/14 0:00 | 11/19/14 2:35 | NULL | Hispanic Te | 1.016667 | 0 | 0 | 0 | 0 |
| 70448 | 8 | 3604165 | 6.27E+09 | S | 1/22/15 0:00 | 1/22/15 13:09 | NULL | Hispanic Te | 1.016667 | 0 | 0 | 0 | 0 |
| 70449 | 8 | 3934520 | 2.13E+09 | S | 6/2/15 20:08 | 6/2/15 20:08 | NULL | Hispanic Te | 1.016667 | 0 | 0 | 0 | 0 |
| 70450 | 8 | 3666243 | 9.1E+09 | S | 2/24/15 0:00 | 2/24/15 17:04 | NULL | Hispanic Te | 1.016667 | 0 | 1 | 0 | 0 |
| 70451 | 8 | 3759956 | 9.52E+09 | S | 4/7/15 0:00 | 4/7/15 14:23 | NULL | Hispanic Te | 1.016667 | 0 | 5 | 0 | 0 |
| 70452 | 8 | 3818411 | 5.62E+09 | S | 4/27/15 0:00 | 4/27/15 13:30 | 00.00.0 | Cymtron | 1.016667 | 0 | 2 | 0 | 0 |

87.     An additional 4,800 phones received text messages, but no calls, for over a year.

88.     100,000 subscriber phones received calls at the exact same time, indicating to Salgado that these were machine-generated or robo-calls.

89.     Additionally, many of the incoming text messages on these phones were random pictures of office interiors or car engines, appearing to be illegitimate.

90.     When Relators shared their concern with Rick Berger, TruConnect's Vice President of Revenue, Berger confirmed that TruConnect does bill the government for Lifeline users with one minute of usage.

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

- 18 -

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

91.    When TruConnect submits invoices to FCC, including FCC form 497, every month, it submits false claims for payment because the subscribers TruConnect claims are not legitimate subscribers under Lifeline regulations.

92.    TruConnect makes false statements for payment to the government about its compliance with the Lifeline regulations.

93.    Compliance with 47 C.F.R. § 54.407(c)(2) and the other Lifeline regulations  are material to payment by the government. Claims for payment are materially false when information submitted on FCC Form 497 has been fraudulently obtained and does not abide by Lifeline regulations.

94.    The FCC pays $9.25 per month for each of these 70,443 subscribers. Between June and July 2015 the FCC paid TruConnect approximately $651,597 for phones with fraudulent data.  Over the course of one year and as a direct result of the robo-calling scheme, the FCC pays approximately $7,891,173 to TruConnect for phones with fraudulent data.

95.    The California Public Utilities Commission subsidizes $12.65 each month for each Lifeline subscriber.  Between June and July 2015, California paid TruConnect approximately $891,103.95 for 70,443 phones with fraudulent data. Over the course of one year and as a direct result of the robo-calling scheme, California pays TruConnect approximately $10,693,247 for phones with fraudulent data.

- 19 -

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

96.     Combined damages under the False Claims Act from the federal government and California come to on or about $18.5 million dollars in damages for one year of TruConnect's fraudulent activity.   This number does not include the $39 link up fee – the initial charge for activating a phone - that California paid in prior years.

97.     Under the direction of Matthew Johnson and Nathan Johnson TruConnect does not record or abide by the FCC guidelines set out in the Lifeline program. TruConnect fails to submit data to the FCC for inbound calls or outbound calls that comply with usage requirement set out in the Lifeline program.

98.     TruConnect does not comply with Lifeline subscriber eligibility regulations.

99.     Under the direction of Matthew Johnson and Nathan Johnson, TruConnect circumvents the Lifeline requirements by pushing robo-calls to Lifeline accounts that do not meet the Lifeline usage requirements. Matthew Johnson and Nathan Johnson rely upon the robo-calls in order to invoice the government and then pocket the money that the government pays for the monthly subsidized fee.

100.    TruConnect also "pumps" SMS messages to Lifeline subscribers who do not meet the FCC requirements. TruConnect will send subscribers messages that seem real but are random picture messages.

- 20 -

101.   TruConnect recklessly disregards the Lifeline regulations and submits false claims to the Federal government and California. TruConnect falsifies "usage" in order to be reimbursed by the government.

102.   TruConnect CEO's, Matthew Johnson and Nathan Johnson directed fraud through their Los Angeles offices by expressly certifying TruConnect's compliance to Lifeline regulations on each submission of FCC Form 497.

**Disclosures and Termination**

103.   Salgado approached Zambrano after the discovery of the usage data. Zambrano shared her concerns with Braxton Carter, the CFO of T-Mobile and a former colleague.

104.   Carter's security team investigated the call data for Plintron and after reviewing the data, considered disconnecting the 800,000 Plintron phones but did not disconnect the phones as there was a contractual obligation between Plintron and T-Mobile. Plintron and T-Mobile do not discuss requirements for MVNE tolling revenues or Lifeline integrity

105.   On July 22, 2015, the Relators approached Rick Berger with their concerns about Lifeline's subscriber data usage. Berger confirmed that TruConnect bills the government for subscribers with one minute of usage.

106.   Unlike Carter who agreed that the phones of 800,000 potentially fake subscribers needed to be de-activated, Berger dismissed the Relators concern about the data usage. Relators were told to disregard usage under one minute.

- 21 -

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

107. Under the direction of Matthew Johnson and Nathan Johnson, TruConnect's Legal and Regulatory Affairs Department, including Melanie King, TruConnect's CFO, Terry Pavek, and Rick Berger have continuously submitted false monthly invoices on FCC Form 497 to the government about TruConnect's Lifeline subscribers.

108. Two days after Relators disclosed their concerns and on July 24, 2015, TruConnect terminated Relators' employment, allegedly due to a Reduction in Force.

## COUNTS
As to All Defendants

### Count I: False Claims Act Violations
### Pursuant to 31 U.S.C. § 3729(a)(1)(A)
### Knowingly Submitting  False Claims for Payment

109. The allegations of all paragraphs in this Complaint are incorporated by reference.

110. In performing the acts described above, Defendants Matthew Johnson, Nathan Johnson, and TruConnect, individually and by its own acts, or through the acts of its agents, servants, officers, and employees, knowingly presented, or caused to be presented, to an officer or employee of the United States Government, false or fraudulent claims for payment or approval in violation of 31 U.S.C § 3729(a)(1).

- 22 -

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

111.   31 U.S.C § 3729(a)(1)(A) imposes liability on a person or organization who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."

112.   TruConnect violates 31 U.S.C § 3729(a)(1) in two ways.

113.   First, each time the Defendants procure a Lifeline subscriber through improper means and bills the federal government for that subscriber, the Defendants have violated the material conditions of payment to the Lifeline program and, consequently, have violated the FCA.

114.   Second, each time Defendants submit to the federal government a claim for payment for a subscriber who is not "using" the phone as required by the regulations, Defendants are submitting false claims for payment.

115.   Defendants' use of "robo-callers" to circumvent the program's usage requirements contravenes the intent of the program.

116.   Every month, Defendants, in order to receive payment from the federal government, must expressly certify compliance with the Lifeline program on the FCC Form 497.

117.   Defendants', by submitting claims for unused phones and for failing to follow customer acquisition and reporting requirements,  induce the government to pay for claims that it would not have paid absent Defendants' fraudulent conduct.

- 23 -

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

118.   TruConnect under the direction of Matthew Johnson and Nathan Johnson, knows or recklessly disregards, the applicable FCC and Lifeline rules and regulations by submitting claims as described above and expressly certifying compliance with the Lifeline program.

119.   The claims submitted by TruConnect are material to the government's decision on whether, and how much, to reimburse TruConnect for services provided to Lifeline subscribers.

120.   As a result of the Defendant's fraudulent conduct, the United States Government has been damaged in amounts to be determined at trial.

**Count II: False Claims Act Violations**
**Pursuant to 31 U.S.C. § 3729(a)(1)(B)**
**Knowingly Making False Records Material to a False Claim**

121.   The allegations of all paragraphs in this Complaint are incorporated by reference.

122.   In performing the acts described above, Defendants Matthew Johnson, Nathan Johnson, and TruConnect, individually and by its own acts, or through the acts of its agents, servants, officers, and employees, knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim in violation of 31 U.S.C § 3729(a)(1)(B).

123.   Defendants violate 31 U.S.C § 3729(a)(1)(B) in at least two ways.

124.   First, Defendants, every month, submit a certification to the FCC stating, "I certify that my company is in compliance with all of the Lifeline

- 24 -

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

program rules, and, to the extent required, have obtained valid certifications for each subscriber for whom my company seeks reimbursement."

125.   As discussed more fully above, Defendants are not in compliance with all of the Lifeline program rules and have not obtained valid certifications for each of their subscribers.  Accordingly, the certification made to the FCC is false.

126.   Second and as detailed more fully above, Defendants maintain records that indicate certain subscribers received phone calls or text messages while knowing that the phone calls and text messages that these subscribers received are from robo-callers.  Because Defendants know that these calls should not be identified in usage reports as being "used" or "active," Defendants' records regarding phone usage are false.

127.   Both the certification concerning compliance with the Lifeline program rules as well as the Defendants' usage reports are material to Defendants' false claims.

128.   As a result of the Defendant's fraudulent conduct, the United States Government has been damaged in amounts to be determined at trial.

129.   As a result of the Defendant's fraudulent conduct, the United States Government has been damaged in amounts to be determined at trial.

### Count III: California False Claims Act Violations
### Pursuant to Cal. Gov't Code § 12651(a)(1)
### Knowingly Submitting  False Claims for Payment

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

130.   The allegations of all paragraphs in this Compliant are incorporated by reference.

131.   In performing the acts described above, Defendants Matthew Johnson, Nathan Johnson, and TruConnect, individually and through the acts of its agents, servants, officers, and employees, knowingly presented, or caused to be presented, to an officer or employee of the California government, false or fraudulent claims for payment or approval under the Lifeline program in violation of Cal. Gov't Code § 12651(a)(1).

132.   Cal. Gov't Code § 12651(a)(1) imposes liability on a person or entity that knowingly presented, or caused to be presented, to an officer or employee of the California government, false or fraudulent claims for payment or approval under the Lifeline program.

133.   TruConnect violates Cal. Gov't Code § 12651(a)(1) in two ways.

134.   First, each time the Defendants procure a Lifeline subscriber through improper means and bill the state of California for that subscriber, the Defendants have violated the material conditions of payment to the Lifeline program and, consequently, have violated Cal. Gov't Code § 12651(a)(1).

135.   Second, each time Defendants submit to the state of California a claim for payment for a subscriber who is not "using" the phone as required by the regulations, Defendants are submitting false claims for payment.

- 26 -

CASE NO. _____

136. Defendants' use of "robo-callers" to circumvent the program's usage requirements contravenes the intent and usage requirements of the program.

137. Every month, Defendants, in order to receive payment from the state of California, must expressly certify compliance with the Lifeline program on the FCC Form 497.

138. Defendants', by submitting claims for unused phones and for failing to follow customer acquisition and reporting requirements,  induce the state of California to pay for claims that it would not have paid absent Defendants' fraudulent conduct.

139. TruConnect under the direction of Matthew Johnson and Nathan Johson, knows or recklessly disregards, the applicable Lifeline rules and regulations by submitting claims as described above and expressly certifying compliance with the Lifeline program.

140. The claims submitted by TruConnect are material to the state of California's decision on whether, and how much, to reimburse TruConnect for services provided to Lifeline subscribers.

141. As a result of the Defendant's fraudulent conduct, the state of California has been damaged in amounts to be determined at trial.

## Count IV: California False Claims Act Violations
### Pursuant to Cal. Gov't Code § 12651(a)(2)
### Knowingly Making False Records Material to a False Claim

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

142.   The allegations of all paragraphs in this Compliant are incorporated by reference.

143.   In performing the acts described above, Defendants Matthew Johnson, Nathan Johnson, and TruConnect, individually and by its own acts, or through the acts of its agents, servants, officers, and employees, knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim in violation of Cal. Gov't Code § 12651(a)(2).

144.   Defendants violate Cal. Gov't Code § 12651(a)(2) in at least two ways.

145.   First, Defendants, every month, submit a certification stating, "I certify that my company is in compliance with all of the Lifeline program rules, and, to the extent required, have obtained valid certifications for each subscriber for whom my company seeks reimbursement."

146.   As discussed more fully above, Defendants are not in compliance with all of the Lifeline program rules and have not obtained valid certifications for each of their subscribers.  Accordingly, the certification that they are "in compliance with all of the Lifeline program rules" is false.

147.   Second and as detailed more fully above, Defendants maintain records that indicate certain subscribers received phone calls or text messages while knowing that the phone calls and text messages that these subscribers received are from robo-callers.  Because Defendants know that these calls should not be

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

- 28 -

CASE NO. _____

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

identified in usage reports as being "used" or "active," Defendants' records regarding phone usage are false.

148.    Both the certification concerning compliance with the Lifeline program rules as well as the Defendants' usage reports are material to Defendants' false claims.

149.    As a result of the Defendant's fraudulent conduct, the state of California has been damaged in amounts to be determined at trial.

150.    As a result of the Defendant's fraudulent conduct, the United States Government has been damaged in amounts to be determined at trial.

### Count V: Retaliation Under the FCA
### Retaliation in Violation of 31 U.S.C. § 3730(h)

151.    Relators reassert and incorporate by reference all paragraphs set forth above as if restated herein.

152.    Relators are employees as defined in the Act.

153.    Defendants are employers as defined in the Act.

154.    TruConnect and CEOs Matthew Johnson and Nathan Johnson retaliated against Relators in violation of 31 U.S.C. § 3730(h) when Defendants terminated Relators two days after reporting to Rick Berger their findings concerning false or fraudulent billing practices.

155.    Relators engaged in protected activity when they reported to company leadership their concerns of fraudulent data billed to the federal government.

- 29 -

CASE NO. _____

156. As evidenced by the very close temporal proximity of only two days, there is a direct causal link between Relator's protected activity and the adverse personnel actions suffered.

157. Relators have been damaged by the retaliatory actions by TruConnect and its employees and are entitled to all relief necessary to make the employees whole.

## Count VI: Retaliation Under the California Government Code
### Retaliation in Violation of Cal. Gov't. Code § 12653

158. Relators reassert and incorporate by reference all paragraphs set forth above as if restated herein.

159. Relators are employees as defined in the Code.

160. Defendants are employers as defined in the Code.

161. TruConnect and CEOs Matthew Johnson and Nathan Johnson retaliated against Relators in violation of Cal. Gov't. Code § 12653 when Defendants terminated Relators two days after reporting to Rick Berger their findings concerning false or fraudulent billing practices.

162. Relators engaged in protected activity when they reported to company leadership their concerns of fraudulent data billed to the federal government.

163. As evidenced by the very close temporal proximity of only two days, there is a direct causal link between Relator's protected activity and the adverse personnel actions suffered.

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

CASE NO. _____

164.   Relators have been damaged by the retaliatory actions by TruConnect and its employees and are entitled to all relief necessary to make the employees whole.

### Count VII: Wrongful Termination
### Consistent with California Labor Code §1102.5 & *Tameny*

165.   Relators reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

166.   Where the employer's motivation for a discharge contravenes some substantial public policy principle, the employer may be liable to the employee for damages occasioned by the discharge. *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 177, 610 P.2d 1330 (1980).

167.   In order to sustain a claim of wrongful discharge in violation of fundamental public policy, plaintiff must prove that his dismissal violated a policy because it was occasioned by plaintiff's reporting an alleged violation of a statute of public importance. *Turner v. Anheuser-Busch, Inc.,* 7 Cal. 4th 1238, 1256, 876 P.2d 1022 (1994).

168.   The employee need not prove that the alleged improper conduct was actually unlawful, but that the employee had "reasonably based suspicions" of illegal activity. *Green v. Ralee Eng'g Co.,* 19 Cal. 4th 66, 78 Cal. Rptr.2d 16, 960 P.2d 1046, 1059 (1998).

**The Employment Law Group, P.C.**
888 17th Street, NW, Suite 900
Washington, D.C. 20006

CASE NO. _____

169.   There is a strong public policy interest in disclosing and preventing theft as articulated in Cal. Penal Code § 484 ( providing "Every person who… shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property… is guilty of theft.") and disclosing and preventing fraud as articulated in Cal. Civ. Code § 1572 (providing, "Actual fraud, within the meaning of this Chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract.").

170.   California courts have long held that when an employer discharges an employee who refuses to defraud a customer, the employer has violated a fundamental public policy and may be liable in tort for wrongful discharge.

171.   Relators' disclosures were protected conduct in that Relators sought to prevent Defendants from defrauding their customers.

172.   Relators suffered an adverse action when Defendants terminated their employment.

173.   Defendants terminated Relators because of their protected activity.

174.   Defendants' stated reason for terminating Relators, a reduction in force, is false and is mere pretext for Defendants' wrongful termination of Relators.

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

CASE NO. _____

175.    As a direct and proximate result of Defendants conduct as allege herein, Relators have suffered, and will continue to suffer loss of income and fringe benefits in an amount to be determined at trial.  Defendants' conduct as alleged herein further proximately caused Relators to suffer emotional distress and mental anxiety in an amount to be determined at trial.

176.    The conduct of Defendants as described herein was oppressive, fraudulent and malicious, done in conscious disregard of, and reckless indifference to, Relators' rights.  Relator is thereby entitled to an award of punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

**Prayer for Relief**

WHEREFORE, Relator prays, on behalf of the United States, the state of California, and himself that, on final trial of this case, judgment be entered in favor the United States, the state of California, and Relators and against Defendants as follows:

1.  In favor of the Relators for the maximum amount pursuant to 31 U.S.C. § 3730(d) to include reasonable expenses, attorneys' fees, and costs incurred by the Relators;

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

- 33 -

CASE NO. _____

2. In favor of the United States against Defendants for treble damages to the federal government from the submission of false claims, and the maximum civil penalties for each violation of the False Claims Act;

3. In favor of the United States and the State of California against Defendants for treble damages to the federal government from the submission of false claims, and the maximum civil penalties for each violation of The California False Claims Act;

4. In favor of Relators for all compensatory and punitive damages, including personal injury damages for pain and suffering, emotional distress, and loss of reputation, back pay, and interest, and attorney's fees and costs to which Relators are entitled under 31 U.S.C. § 3730(h), the California False Claims Act, and the common law of wrongful discharge; and

5. Any other such relief that the Court may deem just and equitable.

## **Demand for a Jury Trial**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and pursuant to the local rules of this Court, the Relator demands a jury trial as to all issues so triable.

Respectfully submitted,
THE EMPLOYMENT LAW GROUP

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006

- 34 -

CASE NO. _____

By: ___/s____

David L. Scher, Esq.
California Bar  No. 184562
R. Scott Oswald, Esq. (*pro hac vice* to be filed)
The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2802
(202) 261-2835 (facsimile)
dscher@employmentlawgroup.com
soswald@employmentlawgroup.com

Attorneys for *Qui Tam* Plaintiffs

- 35 -

CASE NO. _____







Synchronizing the world of commerce

Express Box

US DISTRICT COURT CENTRAL DISTRI
312 N SPRING ST
RM G-8
LOS ANGELES CA 90012-1499

P:ORANGE S:6

122-RDC

1ZE5B379019787 8459

RECEIVED
MAY 27 2016
CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

Print Label

Reference No.1: 3634-Salgado Regis

BILLING: P/P

UPS NEXT DAY AIR
TRACKING #: 1Z E5B 379 01 9787 8459

1

CA 901 9-12

LOS ANGELES CA 90012
312 NORTH SPRING STREET
ROOM G-8
WESTERN DIV., CLIENT INTAKE
US DISTRICT COURT, CENTRAL DISTRICT
213 8941565
CLERK OF THE COURT
SHIP TO:

LIZ ESTEPHAN
THE EMPLOYMENT LAW GROUP
888 17TH STREET, NW
WASHINGTON DC 20006

9/26/2016          DWT: 18,13,3          1 OF 1

3 LBS