Benjamin N. Gluck - SBN 203997
  bgluck@birdmarella.com
Paul S. Chan - SBN 183406
  pchan@birdmarella.com
Julia B. Cherlow - SBN. 290538
  jcherlow@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendants TruConnect
Communications, Inc., Matthew Johnson
and Nathan Johnson

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| United States of America and the State of California ex rel. Reggie Salgado and Melinda Zambrano,<br><br>        Plaintiffs and Relators,<br><br>      vs.<br><br>TruConnect Communications, Inc., Matthew Johnson and Nathan Johnson.<br><br>        Defendants. | **CASE NO. 2:16-cv-03767-PSG-FFM**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS RELATORS' SECOND AMENDED COMPLAINT**<br><br>*[Filed Concurrently with Declaration of Paul S. Chan, Request for Judicial Notice, and Proposed Order]*<br><br>Date:    November 23, 2020<br>Time:    1:30 PM<br>Crtrm.:  6A<br><br>Assigned to Hon. Philip S. Gutierrez |

3670824

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD, PLEASE TAKE NOTICE** that, on November 23, 2020 at 1:30 p.m., or as soon thereafter as the U.S. District Court for the Central District of California is available, in Courtroom 6A of the First Street Courthouse located at 350 West First Street, Los Angeles, California, 90012-4565, Defendants TruConnect Communications, Inc., Matthew Johnson and Nathan Johnson ("TruConnect") will and hereby do move the Court to dismiss Plaintiffs-Relators Reggie Salgado's and Melinda Zambrano's ("Relators") Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.

As detailed in the attached Memorandum of Points and Authorities, the Relators' SAC fails to state a claim under the federal or California False Claims Act because: (1) it fails to plead with particularity that TruConnect violated any requirements associated with its participation in the Lifeline Program; (2) it does not link any such alleged violations to a false claim for payment or a false certification of compliance that is a prerequisite for payment; and (3) given the federal government's prior knowledge of the facts underlying Relators' claims and its continued and uninterrupted payments of TruConnect's subsequent claims for payment, Relators cannot establish that TruConnect **knowingly** presented a false claim or that any alleged violation was **material** to payment of claims for federal reimbursement.

In addition, Relators' SAC must be dismissed under 31 U.S.C. § 3730(e)(4) because substantially the same allegations as those in the complaint were "publicly disclosed" before the complaint was filed, and the Relators were not the "original source" of the information. Relators' retaliation claims and claims under the California labor code are similarly flawed and must be dismissed.

Accordingly, TruConnect respectfully requests that that all of Relators' claims be dismissed with prejudice.

TruConnect's Motion to Dismiss is based on this Notice, the attached Memorandum of Points and Authorities, the concurrently-filed Declaration of Paul S.

1  Chan, the concurrently filed Request for Judicial Notice, the concurrently-filed
2  proposed order, any additional briefing on this subject, and the evidence and
3  arguments that will be presented to the Court at the hearing on this matter.
4        This motion is made following the conference of counsel pursuant to Local
5  Rule 7-3, which took place on September 18, 2020.

6

7  DATED:  October 2, 2020        Benjamin N. Gluck
8                                 Paul S. Chan
                                   Julia B. Cherlow
9                                 Bird, Marella, Boxer, Wolpert, Nessim,
10                                Drooks, Lincenberg & Rhow, P.C.

11

12                             By:     /s/ Paul S. Chan
13                                        Paul S. Chan
14                                    Attorneys for Defendants TruConnect
                                     Communications, Inc., Matthew Johnson and
15                                   Nathan Johnson

16

17

18

19

20

21

22

23

24

25

26

27

28

3670824

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ................................................................................ 10

II.     BACKGROUND ................................................................................. 11

     A.    The December 2015 FCC Investigation ............................... 11

     B.    Relators' Allegations and the Government's Decision Not to Intervene .............................................................................. 12

III.    LEGAL STANDARDS ...................................................................... 14

     A.    Rule 12(b)(6) ........................................................................ 14

     B.    Rule 9(b) ............................................................................... 15

IV.    ARGUMENT .................................................................................... 16

     A.    Relators' First Two Causes of Action Under the FCA Should Be Dismissed Pursuant to Rule 12(b)(6) and for Failure to Meet Rule 9(b)'s Heightened Pleading Requirements.......................... 16

          1.    Relators Do Not Allege With Particularity that TruConnect Violated Any Lifeline Regulations ........................ 17

               a.    Relators' General Allegations Regarding the "Street Teams" Are Insufficient And Completely Irrelevant....... 17

               b.    Relators' Purported Usage Analysis Is Facially Implausible and Fails to Allege Any Violations With Specificity.................................................. 18

               c.    Relators' Remaining Allegations About the Purported Robo-Calls And Text Messages Are Insufficient.................................................... 21

          2.    Relators Do Not Allege With Particularity Any False Statement in Connection with Any Claim for Payment. ........... 22

          3.    Given the Government's Prior Knowledge and Continued Payment of Relators' Claims, Relators Cannot Plead that TruConnect *Knowingly* Presented a False Claim for Payment. ....................................................................... 24

          4.    Relators Have Not, And Cannot, Plausibly Plead that Any Allegedly False Statement or Record Was *Material* to the Submission of a Claim for Payment. .......................... 26

     B.    The Public Disclosure Bar Forecloses Relators' FCA Claims ............ 28

          1.    The December 2015 FCC Subpoena and TruConnect's Response Thereto Constitutes a Prior Public Disclosure. .......... 29

4

2.      Relators Are Not Original Sources Within the Meaning of
the FCA............................................................................................30

C.      Relators' Retaliation Claim Also Must Be Dismissed Under Rule
12(b)(6). ...................................................................................................31

D.      Relators' State Law Claims Must Be Dismissed. ...................................33

1.      Relators' California FCA Claims (Counts 3, 4 and 6) Fail
Under Rule 9(b). ...........................................................................33

2.      Dismissal of Relators' FCA Claims Requires Dismissal of
All State Law Claims......................................................................33

E.      Leave to Amend Should Be Denied.......................................................33

V.      CONCLUSION ...................................................................................................34

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*U.S. ex rel. Aflatooni v. Kitsap Physicians Serv.*,
  314 F.3d 995 (9th Cir. 2002) ................................................................22

*U.S. ex rel. Armstrong-Young v. Carelink Hospice Servs., Inc.*,
  No. 15-cv-04095, 2018 WL 4773111 (N.D. Cal. Oct. 1, 2018) ........24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................14, 28

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................14

*Bly-Magee v. California*,
  236 F.3d 1014 (9th Cir. 2001) ................................................16

*Branch v. Tunnell*,
  14 F.3d 449 (9th Cir. 1994), *overruled on other grounds by
  Galbraith v. City of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ....................14

*Brown v. Carrington Mortg. Servs., LLC*,
  No. 12-6974-PA-MRW, 2013 WL 1196868 (C.D. Cal. Mar. 25,
  2013) ...............................................................34

*U.S. ex rel. Cafasso v. Gen Dynamics C4 Sys.*,
  637 F.3d 1047 (9th Cir. 2011) ................................................*passim*

*U.S. ex rel. Cericola v. Fannie Mae*,
  529 F. Supp. 2d 1139 (C.D. Cal. 2007) ...................................16

*U.S. ex rel. Clausen v. Lab. Corp. of Am.*,
  290 F.3d 1301 (11th Cir. 2002) ..............................................23

*U.S. ex rel. Dresser v. Qualium Corp.*,
  No. 5:12-cv-01745-BLF, 2016 WL 3880763 (N.D. Cal. July 18,
  2016) ...............................................................27

*Ebeid ex rel. U.S. v. Lungwitz*,
  616 F.3d 993 (9th Cir. 2010) ................................15, 17, 23, 24

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ....................................................................... 14, 26

*Ecological Rights Found. v. Pac. Gas & Elec. Co.*,
    713 F.3d 502 (9th Cir. 2013) ............................................................................. 14

*U.S. ex rel. Fine v. Chevron Inc.*,
    72 F.3d 740 (9th Cir. 1995) (en banc) ............................................................... 29

*U.S. ex rel. Found. Aiding The Elderly v. Horizon W.*,
    265 F.3d 1011 (9th Cir. 2001), *opinion amended on denial of re'g*
    *sub nom. U.S. ex rel. Found. Aiding Elderly v. Horizon W., Inc.*, 275
    F.3d 1189 (9th Cir. 2001) ........................................................................... 28, 29

*U.S. ex rel. Fryberger v. Kiewit Pacific Co.*,
    41 F. Supp. 3d 796 (N.D. Cal. 2014) ........................................................... 29, 30

*Gallagher v. U.S.*,
    No. 17-cv-00586-MEJ, 2017 WL 4390172  (N.D. Cal. Oct. 3, 2017)............15

*U.S. ex rel. Hagood v. Sonoma Cnty. Water Agency*,
    929 F.2d 1416 (9th Cir. 1991)……………………………………………….25

*U.S. ex rel. Hooper v. Lockheed Martin Corp.*,
    688 F.3d 1037 (9th Cir. 2012) ..................................................................... 16, 25

*U.S. ex rel. Hopper v. Anton*,
    91 F.3d 1261 (9th Cir. 1996) ............................................................................. 24

*Klein v. Mony Life Ins. Co. of Am.*,
    No. CV 17-07003-RSWL-AS, 2018 WL 2472916 (C.D. Cal. May
    30, 2018) ........................................................................................................... 15

*Knudsen v. Spring Comms. Co.*,
    Nos. C13-04476 CRB, C13-4465 CRB, C13-4542 CRB, 2016 WL
    4548924 (N.D. Cal. Sept. 1, 2016) .................................................................... 28

*Lee v. City of L.A.*,
    250 F.3d 668 (9th Cir. 2001) ............................................................................. 14

*Mack v. S. Bay Beer Distrib.*,
    798 F.2d 1279 (9th Cir. 1986)……………………………………………….15

*U.S. ex rel. Mateski v. Raytheon Co.*,
    816 F.3d 565 (9th Cir. 2016) ............................................................................. 28

7

*U.S. ex rel. Mock v. Lockheed Martin Idaho Techs. Co.*,
  No. 96-0061-3-BLW (D. Idaho Dec. 14, 2001) .........................................29, 30

*Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*,
  275 F.3d 838 (9th Cir. 2002) ................................................................................32

*Mullis v. U.S. Bankr. Court*,
  828 F.2d 1385 (9th Cir. 1987) .............................................................................15

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) ...................................................................................16

*Prather v. AT&T, Inc.*,
  847 F.3d 1097 (9th Cir. 2017) .............................................................................29

*U.S. ex rel. Rosales v. San Francisco Hous. Auth*,
  173 F. Supp. 2d 987 (N.D. Cal 2001)...................................................................29

*Ryan v. Microsoft Corp.*,
  No. 14-CV-04634-LHK, 2015 WL 1738352 (N.D. Cal. Apr. 10,
  2015)......................................................................................................................15

*Sanford v. MemberWorks, Inc.*,
  625 F.3d 550 (9th Cir. 2010) ...............................................................................33

*Schindler Elevator Corp. v. U.S. ex rel. Kirk*,
  563 U.S. 401 (2011) .............................................................................................28

*Seal 1 v. Seal 2*,
  255 F.3d 1154 (9th Cir 2001) ..............................................................................29

*U.S. ex rel. Solis v. Millennium Pharma., Inc.*,
  885 F.3d 623 (9th Cir. 2018) ...............................................................................29

*United Health Servs., Inc. v. U.S. ex rel. Escobar*,
  136 S.Ct. 1989 (2016)………………………………………………………*passim*

*United Mine Workers v. Gibbs*,
  383 U.S. 715 (1966) .............................................................................................33

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .............................................................................33

*Wang ex rel. U.S. v. FMC Corp.*,
   975 F.2d 1412 (9th Cir. 1992), *overruled on other grounds by U.S.*
   *ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121 (9th Cir.
   2015) ...................................................................................................... 25

*U.S. ex rel. Zemplenyi v. Grp. Health Co-op.*,
   No. 09-603-RSM, 2012 WL 1642213 (W.D. Wash. May 10, 2012) ................ 32

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ..................................................................... 33, 34

**Statutes**

31 U.S.C. § 3729(a)(1)(A) ................................................................................ 16

31 U.S.C. § 3729(a)(1)(B) ................................................................................ 16

31 U.S.C. § 3729(b)(1) ..................................................................................... 25

31 U.S.C. § 3729(b)(4) ..................................................................................... 26

31 U.S.C. § 3730(e)(4)(A) ................................................................................ 30

31 U.S.C. § 3730(e)(4)(B)(ii) ........................................................................... 31

31 U.S.C § 3730(e)(4)(A)(ii) ....................................................................... 29, 30

False Claims Act .................................................................................... *passim*

**Other Authorities**

47 C.F.R. § 54.404(a) ...................................................................................... 29

47 C.F.R. § 54.407(c)(2) at paragraph 43 ................................................ 19, 21, 22

Federal Rules of Civil Procedure Rule 8 .......................................... 14, 17, 27, 34

Federal Rules of Civil Procedure Rule 8(a) ...................................................... 34

Federal Rules of Civil Procedure Rule 8(a)(2) .................................................. 14

Federal Rules of Civil Procedure Rule 9(b) ......................................... *passim*

Federal Rules of Civil Procedure Rule 12(b)(6) ..................................... 14, 16, 31

## I.    INTRODUCTION

Relators Reggie Salgado and Melinda Zambrano ("Relators") worked for TruConnect for all of four months before they were both laid off in July 2015 as part of a company-wide reduction in force.  (Second Amended Complaint ("SAC") ¶¶ 20-22, 108.)  Unhappy with their lay off, Relators have now drummed up this parasitic False Claims Act lawsuit against TruConnect Communications, Inc., Matthew Johnson and Nathan Johnson (collectively, "TruConnect"), alleging the company committed unspecified regulatory violations in the process of procuring government reimbursement payments.  There is absolutely no factual basis for Relator's false and inflammatory allegations.

Indeed, Relators' pleading merely rehashes the same alleged conduct that was publicly disclosed to – and investigated by – the FCC starting the year *prior* to the filing of Relators' complaint.  TruConnect fully cooperated with that investigation, and at its conclusion, both the federal government and the People of the State of California declined to intervene in Relators' suit.  Not surprisingly, the SAC does not contain any allegations that the government ever stopped payment on TruConnect's claims for payment, ever sought any restitution for prior payments, or otherwise took issue with TruConnect's alleged conduct – all while it continued to make payments year over year.  The absence of any change in the government's payment practices – notwithstanding its undisputed knowledge of TruConnect's alleged conduct – is fatal to Relators' belated and opportunistic lawsuit.

The SAC also fails to state any legally-cognizable FCA claims.  The SAC rests entirely upon conclusory, unsubstantiated, and at times incomprehensible allegations of regulatory non-compliance that do not come close to satisfying either the stringent pleading requirements or substantive elements of an FCA action.  **First**, the SAC fails to plead with particularity facts that support the conclusory allegations that TruConnect violates certain "program requirements governing the acquisition of customers and data reporting" (SAC ¶ 9) or that TruConnect violates any usage

requirements associated with its participation in the Lifeline Program.  **Second**, even if the SAC did adequately plead violations of regulations associated with the Lifeline Program, the SAC does not link any such violations to a false claim for payment or a false certification of compliance that is a prerequisite for payment.  **Third**, given the federal government's undisputed knowledge of the facts underlying Relators' claims and its continued payments of TruConnect's claims, Relators cannot prove that TruConnect *knowingly* presented a false claim or that any alleged violation was *material* to payment of claims for federal reimbursement.  **Fourth**, even if Relators' claims were adequately pleaded, they would be independently foreclosed by the FCA's public disclosure bar, which exists to prevent opportunistic lawsuits, like this one, that merely repackage allegations made in prior public disclosures.  Relators' retaliation claims and California FCA claims are similarly flawed and must be dismissed for the same reasons.

Plaintiffs suing under the FCA are held to heightened pleading and substantive requirements because the Act is punitive in nature, and defending against even non-intervened FCA actions imposes significant financial burdens and business interruption costs.  The FCA is not intended to be invoked as an adjunct to garden variety employment disputes.  Nor are FCA Plaintiffs allowed to proceed where, as here, it is undisputed that the government had pre-existing knowledge of the alleged billing practices at issue, thoroughly investigated them, declined to intervene in the action, and never changed any of its payment practices in response.  The SAC should be dismissed with prejudice.

## II.  BACKGROUND

### A.    The December 2015 FCC Investigation

In or about December 17, 2015 – six months before Relators commenced this action – the Office of the Inspector General of the FCC (the "OIG") issued a subpoena to TruConnect (the "2015 Subpoena").  (RJN at Exh. 1.)  The 2015 Subpoena covers, among other things: (i) information relating to TruConnect's

participation in the Lifeline Program, generally (*id.* at Reqs. 5, 6, 12, 13); (ii) TruConnect's use of street teams to procure Lifeline subscribers (*id.* at Reqs. 1-3, 8, 9, 10, 12); (iii) TruConnect's subscriber's usage/failure to use Lifeline wireless services (*id.* at Req. 5); (iv) TruConnect's submission of claims for payment for Lifeline subscribers (*id.* at Req. 7); and (v) any fraud, or investigation of fraud, in connection with TruConnect's participation in the Lifeline Program (*id.* at Reqs. 9-12).  TruConnect made five productions to the OIG in response to each of the requests in the 2015 Subpoena, between February 1, 2016 and May 2, 2016, Relators commenced this action on May 31, 2016.  (RJN at Exhs. 2-6.)

**B.     Relators' Allegations and the Government's Decision Not to Intervene**

Relators worked for TruConnect for approximately 3-4 months in the Spring of 2015.  (SAC ¶¶ 20-22.)  On May 31, 2016, Relators filed their first Complaint under seal.  (Dkt. No. 1.)  On September 19, 2016, the OIG of the FCC issued a second subpoena to TruConnect (the "2016 Subpoena"), largely duplicative of the 2015 Subpoena, and seeking information from TruConnect regarding its user acquisition practices and subscriber usage data.  (RJN at Exh. 7.)  During the period from October 2016 through 2017, TruConnect made multiple productions of documents and information in response to the 2016 Subpoena.  (RJN at Exhs. 8-13.)  After completing an exhaustive review of TruConnect's responses to the 2016 Subpoena, on October 8, 2019, the United States declined to intervene in Relators' case.  (Dkt. No. 54.)  On May 19, 2020 the People of the State of California also declined to intervene in Relators' case, and the case was unsealed. (Dkt. Nos. 58, 59.)  On June 25, 2020, Relators filed the SAC, which is the operative pleading in this case.  (Dkt. No. 60.)

Relators' allegations concern TruConnect's participation in the Lifeline Program, through which "TruConnect provides wireless service to qualified low income families."  (SAC ¶ 27.)  Specifically, Relators allege that TruConnect

submitted false certifications of compliance with certain Lifeline regulations and submitted false claims for payment to the government for wireless devices that did not meet Lifeline usage requirements, in violation of the federal FCA and California FCA.

Relators offer two speculative theories to support their hypothesis of "falsity." First, Relators allege that TruConnect's use of street teams to obtain subscribers—a practice widely utilized by wireless carriers during the relevant period—somehow constituted "procur[ing] Lifeline subscriber[s] through improper means," and that the street teams do not obtain "proper certification" of Lifeline subscribers.  (SAC ¶¶ 63-70.)  While Relators confusingly refer to a number of Lifeline regulations (*id.* at ¶¶ 34-48), Relators do not allege that the street team practices, in themselves, violate any of these specific regulations, and in fact, they do not.

Second, Relators allege that TruConnect pumps "robo-calls" and text messages to show fraudulent usage on Lifeline accounts that do not receive calls or texts during a given period.  TruConnect then allegedly counts these contacts as "usage," and bills the government for these accounts, in violation of Lifeline regulations.  (*Id.* at ¶¶ 8, 13, 70, 83, 99.)  Relators' allegations are based solely on a purported "analysis" of six "broken phones," some "current and historical usage data" from an unspecified time period, and approximately one month of purported "subscriber data" – none of which points to ***any*** specific robo-calls or text messages, much less that any person/entity related to TruConnect caused the robo-calls or texts to be sent, or that TruConnect actually submitted any claims for payment based on any of these alleged robo-calls or texts.  (*Id.* at ¶¶ 77-90.)

Having stated these two speculative theories, Relators then allege in wholly conclusory fashion that false claims for payment were therefore submitted to the government, in violation of the federal and California's FCA.  (*Id.* at ¶¶ 97-102.)

In addition, Relators conclusorily allege that when they presented their "findings" to TruConnect, they were terminated, in violation of the retaliation

provisions of the federal and California FCA and the California Labor Code.  (*Id*. at ¶ 108.)  In the same breath, Relators admit that TruConnect was conducting a reduction in force at the exact time they were terminated.  (*Id*.)

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" in order to satisfy Rule 8(a)(2).  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This plausibility analysis requires more than Relators' "legal conclusions and threadbare recitals of a cause of action."  *Eclectic Properties East, LLC*, 751 F.3d at 998 (quotation and citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  That is, "[f]actual allegations must be enough to raise a right of relief above the speculative level[.]"  *Twombly*, 550 U.S. at 555.  Dismissal is appropriate if the well-pleaded facts do not "possess enough heft" to warrant an inference of anything more than the mere possibility of misconduct.  *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 511 (9th Cir. 2013); *see Iqbal*, 556 U.S. at 678.  As discussed below, the SAC fails this Rule 8 plausibility test and should be dismissed pursuant to Rule 12(b)(6).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion.  *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (citation and quotation marks omitted).  However, "a court may take judicial notice of 'matters of public record,'" *id.* at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)) without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*

*v. City of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002).  This includes the service of, and response to, subpoenas, especially when issued by an administrative agency like the FCC.  *Klein v. Mony Life Ins. Co. of Am.*, No. CV 17-07003-RSWL-AS, 2018 WL 2472916, at *3 (C.D. Cal. May 30, 2018) ("Finally, the Court takes judicial notice of the fact of service of and response to the subpoena") (citing *Gallagher v. U.S.*, No. 17-cv-00586-MEJ, 2017 WL 4390172, at *3 (N.D. Cal. Oct. 3, 2017)); *see also Ryan v. Microsoft Corp.*, No. 14-CV-04634-LHK, 2015 WL 1738352, at *4 (N.D. Cal. Apr. 10, 2015) (taking judicial notice of "documents issued by the Department of Justice" on motion to dismiss).  The court need not accept as true allegations that contradict facts which may be judicially noticed.  *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

### B.  Rule 9(b)

Because the FCA is a fraud statute, Relators' SAC is also subject to the pleading requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)").  *U.S. ex rel. Cafasso v. Gen Dynamics C4 Sys.*, 637 F.3d 1047, 1054-55 (9th Cir. 2011). While the Ninth Circuit does not require Relators to identify each allegedly false claim for payment at issue, it does mandate that they allege "details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998-99 (9th Cir. 2010).  The heightened pleading standard of Rule 9(b) therefore requires Relators to state with particularity the circumstances constituting the FCA violation, including the "'who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso,* 637 F.3d at 1055 (quoting *Ebeid*, 616 F.3d at 998).  As discussed below, Relators have not done so.[1]

---

[1] The Rule 9(b) requirements ensure that TruConnect receive notice of "the particular misconduct which is alleged to constitute the fraud charged so that [it] can

# IV.    ARGUMENT

## A.    Relators' First Two Causes of Action Under the FCA Should Be Dismissed Pursuant to Rule 12(b)(6) and for Failure to Meet Rule 9(b)'s Heightened Pleading Requirements.

The Supreme Court has made clear that the FCA is not an "all-purpose antifraud statute."  *United Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S.Ct. 1989, 2003 (2016).  Mere "unsavory conduct is not, without more, actionable under the FCA."  *Cafasso*, 637 F.3d at 1058.  Even with the benefit of every pleading inference, a complaint that merely "identifies a general sort of fraudulent conduct but specifies no particular circumstances of any discrete fraudulent statement, is precisely what Rule 9(b) aims to preclude."  *Escobar*, 136 S.Ct. at 1057.

To state a cause of action under 31 U.S.C. § 3729(a)(1)(A), Relators must set forth well pleaded facts demonstrating that TruConnect knowingly presented or caused to be presented a false or fraudulent claim for payment to the government. *U.S. ex rel. Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1047 (9th Cir. 2012). To state a cause of action under 31 U.S.C. § 3729(a)(1)(B), Relators must plead facts demonstrating that TruConnect knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim.  *Id*. at 1048.

Under both theories, Relators must plead with particularity facts demonstrating "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that

---

defend against the charge and not just deny that [it has] done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation and citation omitted).  The Rule likewise prevents Relators from using litigation as a fishing expedition to discover "unknown wrongs."  *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (quotation and citation omitted).  Relators are required to satisfy Rule 9(b) because, as purported whistleblowers, they should "easily" be able to meet that standard, because "insiders who are privy to fraud, which is the group that the statute encourages to bring these FCA lawsuits, should have adequate knowledge of the wrongdoing at issue."  *U.S. ex rel. Cericola v. Fannie Mae*, 529 F. Supp. 2d 1139, 1144 (C.D. Cal. 2007); *see also Bly-Magee*, 236 F.3d at 1019.

was material, causing (4) the government to pay out money or forfeit moneys due." *Ebeid*, 616 F.3d at 997.  Relators fail to meet this standard under Rule 9(b) and Rule 8, as set out below.

### 1. Relators Do Not Allege With Particularity that TruConnect Violated Any Lifeline Regulations.

Relators complicate their allegations that TruConnect violated certain Lifeline regulations, by citing generally to multiple complex provisions in the Code of Federal Regulations and detailing (largely incomprehensibly) Relators' purported "analysis" of TruConnect's usage and subscriber data.  When boiled down to their core, however, Relators' allegations are that TruConnect violated certain unspecified Lifeline regulations by (1) employing street teams to assist with customer acquisition (SAC ¶¶ 63-70), and (2) using alleged robo-calls and unsolicited text messages to falsify usage data for subscribers, and then billing the government for these accounts. (*Id.* at ¶¶ 8, 13, 70, 83, 99.)  Relators fail to satisfy Rule 9(b) and Rule 8 with respect to either set of allegations.

### a. Relators' General Allegations Regarding the "Street Teams" Are Insufficient And Completely Irrelevant.

Relators allegations regarding the acquisition of Lifeline subscribers through street teams are unclear and ineffectual—they do not come close to showing the "who, what, when, where, and how of the misconduct charged," as required under Rule 9(b). *Cafasso,* 637 F.3d at 1055.  Relators allege generally that because TruConnect made use of independent "street teams" to obtain customers, TruConnect violated some unspecified FCC regulations or guidelines (SAC ¶¶ 63-70). Specifically, Relators complain that the street teams "do not have storefronts" and "hand out mobile phones . . . outside of Unemployment Insurance offices and Social Security offices" (*id.* at 63); hand out "live" phones with SIM cards already activated (*id.* at ¶ 64); accept proof of food stamps as evidence of low income (*id.* ¶ 65); do not pay for the phone when delivered to subscribers, and get paid whether the phone is ultimately turned on or off (*id.* at ¶ 67); and "monthly statements are not sent to

subscribers." (*Id.* at ¶ 68.) Critically, Relators do not make *any* allegation that as a result of these actions, the street teams violate any specific Lifeline regulations or guidelines.

The only allegation that comes close to pleading an actual violation of the Lifeline regulations is that "[t]he street teams do not follow certification regulations [which] require proper certification of Lifeline subscribers." (*Id.* at ¶ 66.) But Relators do not identify *which* certification regulation(s) the street teams allegedly "do not follow," much less what is meant by "proper certification of Lifeline subscribers." Confusingly, Relators point to certain information that they allege Lifeline *subscribers* must provide to carriers like TruConnect—"name, birth date, address, number of people in his or her household, social security number, proof of income that is at or below 135% of the federal Poverty Guidelines or receive aid from one of the federal assistance programs." (*Id.*) But this requirement, if it exists, is an obligation for the *subscribers* to follow, not the street teams. And Relators do not even allege that any subscribers have failed to provide this information to TruConnect. Further, Relators' reference to TruConnect's obligations (not the street team's obligations) "*if* [it] does not verify certification under 47 C.F.R. § 54.404(a)" (*id.* (emphasis added)) is a red herring because *Relators do not plead any facts demonstrating that TruConnect "does not verify certification under 47 C.F.R. § 54.404(a)*." Thus, on the face of the SAC, the purported regulatory obligation is not triggered. Accordingly, Relators' street team allegations do not state with particularity "'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso,* 637 F.3d at 1055.

### b. Relators' Purported Usage Analysis Is Facially Implausible and Fails to Allege Any Violations With Specificity.

Relators base the majority of their usage allegations on a purported analysis of 38 days of "subscriber data." (*See, e.g.,* SAC ¶¶ 85-96.) As an initial matter, this entire analysis is facially implausible because, as Relators acknowledge, the Lifeline

18

Program required a customer to **"use" the service just once every sixty days** for TruConnect to collect payment from the FCC.  (SAC ¶ 7.)  If Relators analyzed only 38 days of subscriber data, by definition, the data would not show whether the subscribers used the service within the sixty-day window required for TruConnect to collect payment.  That certain subscribers allegedly did not "use" the service within the 38 days that Relators analyzed is wholly irrelevant because they easily could have "used' the service during the remaining 22 days of the usage period.  Relators' extrapolation that the 38-day analysis has any bearing on subscriber usage in any other usage period is equally conclusory, and has no bearing in fact – if the analysis is not probative of usage during the partial period when it took place, it **cannot** be probative of usage during other 60-day usage periods.

Moreover, even if Relators' 38-day analysis could demonstrate usage violations, which it cannot, Relators' findings from the 38-day analysis do not actually show that any subscribers ran afoul of the Lifeline usage requirements. Relators allege that during the 38-day period, 70,443 subscribers "had one minute or less" of usage.  (SAC ¶ 86).  But, Relators do not identify **even one subscriber** that had **zero minutes** of usage.  Indeed, the chart Relators include in the SAC shows that **each subscriber had at least one minute of usage** (*id.*), and many subscribers also had at least one or more SMS messages.  (*Id.*)  By Relators' own account of the Lifeline usage requirements in 47 C.F.R. § 54.407(c)(2) at paragraph 43 of the SAC, this is sufficient to constitute "using" the service within the last 60 days.  Thus, all of Relators' allegations of usage violations based on this data set are facially implausible.[2]

---

[2]   The same goes for the purported 4,800 phones that received text messages, but no calls, for over a year.  (*Id*. at 87.)  Relators make no allegations about whether these 4,800 phones **placed** calls, which they very well may have.  Nor do Relators allege that TruConnect actually billed the government for these phones.  What's more, Relators fail to allege how their analysis of 38 days of subscriber data could

1    There are other problems with Relators' purported usage analysis.  Relators'

2  allegation that the 38-day analysis showed that 100,000 subscriber phones received

3  calls at the exact same time, thus "indicating to Salgado that these were machine-

4  generated or robo-calls" (SAC ¶ 88), does not satisfy the "who, what, when, where

5  and how of the misconduct charged," as required under Rule 9(b).  *Cafasso,* 637 F.3d

6  at 1055.  Among other things, Relators fail to allege whether these purported 100,000

7  calls came from the same number or set of numbers, much less than these calls were

8  made by TruConnect or its agents.  Indeed, it is not clear from the data set excerpted

9  in the SAC that Relators would have even been able to see whether multiple

10 subscribers received calls at the same time – such information is not included in the

11 table at paragraph 86.  Relators' conclusory allegation that they ***thought*** these calls

12 were machine-generated or robo-calls is simply not enough.[3]

13   Relators' allegations with respect to the six "broken phones" are similarly

14 flawed in that Relators never actually allege that TruConnect is billing the

15 government for these phones, or that TruConnect was in any way related to the

16 purported calls and texts that the phones were receiving.  (SAC ¶¶ 77-80, 89.)  Thus,

17 Relators fail to plausibly allege any usage violations based on these "broken phones."

18 _____

19 show that these 4,800 phones received no calls for over a year.

20 [3]   Even if the 38-day analysis ***did*** show certain usage violations (it does not), and
21 even if Relators actually alleged that TruConnect submitted claims for payment for
   subscribers who violated the Lifeline usage requirements (they do not), Relators'
22 allegations would fail for a separate and independent reason: TruConnect, like all
   other participants in the Lifeline wireless program, can amend its claims for
23 payment after filing.  Indeed, TruConnect can refile its claims up to a year after any
   errors may have been made.  Thus, if TruConnect was to have erroneously
24 submitted a claim for payment for a subscriber who was no longer using his/her
   Lifeline wireless service, TruConnect could and would amend its submission.
25 Every carrier does this as a part of its normal operating procedure.  For Relators'
   claims based on the purported 38-day analysis to succeed, they would need to meet
26 this additional hurdle of alleging that TruConnect never submitted amended claims
27 for payment.  But Relators do not, and cannot, make this allegation.
28

And Relators' allegations regarding Salgado's purported analysis of "current and historical usage data" do not satisfy Rule 9(b)'s heightened pleading requirements either.  Relators do not allege *when* this data is from, *what* it consists of, whether Salgado has the requisite expertise to analyze the data, much less that this data was ever used to submit claims for payment to the government.  Relators simply assert that if TruConnect "considers a phone 'active,' it will bill the government for that phone."  (SAC ¶ 83.)  But Relators do not identify even one example where a specific subscriber that TruConnect considered "active" was billed to the government, even though the subscriber showed no calls or text messages for over a year, nor have Relators alleged specific facts supporting any inference that such claims for payment were submitted

### c.   Relators' Remaining Allegations About the Purported Robo-Calls And Text Messages Are Insufficient.

Relators conclusorily allege that TruConnect violates certain usage requirements of the Lifeline Program by "pushing" robo-calls and text messages to Lifeline accounts that do not meet the Lifeline usage requirements.  (SAC ¶¶ 8, 13, 70, 77, 88, 94, 95, 99, 115, 126, 136, 147.)  These allegations fail under Rule 9(b) because: (1) Relators allegations fail to show that these purported robo-calls and text messages violate the Lifeline usage requirements under 47 C.F.R. § 54.407(c)(2); and (2) even if they did, Relators do not adequately plead that TruConnect sent or caused the robo-calls or text messages to be sent.

As Relators explain, "[u]nder 47 C.F.R. § 54.407(c)(2), the following constitutes 'using' the [Lifeline] service with[in] the last sixty days . . . (iii) answering an incoming call from a party other than the eligible telecommunications carrier or the eligible telecommunications carrier's agent or representative; or (iv) responding to direct contact from the eligible communications carrier and confirming that he or she wants to continue receiving the Lifeline service."  (SAC ¶ 43.) Relators' conclusory allegations about the purported robo-calls suggest they could

just as plausibly be "incoming calls from a party other than" TruConnect or its agent or representative, or "direct contact from [TruConnect] confirming that [the subscriber] wants to continue receiving the Lifeline service."  Indeed, Relators do not make any specific allegations at all about the robo-calls, much less that they are not "usage" under 47 C.F.R. § 54.407(c)(2).  This is facially insufficient under Rule 9(b).

Even if Relators could allege that the challenged robo-calls and texts violate the usage requirements under the Lifeline regulations (which they don't), the robo-call/text message allegations cannot support Relators' falsity conclusion because Relators fail to plead the "'who, what, when, where, and how of the misconduct charged.'"  *Cafasso,* 637 F.3d at 1055.  Indeed, Relators do not identify even one specific robo-call or text message, or one phone number from which such purported robo-calls/text messages were sent.  Similarly, Relators do not point to any TruConnect officer, employee, agent, or representative who made or caused to be made even one robo-call or text message.  And, critically, Relators do not identify even one subscriber that TruConnect billed to the government that received one of these purported robo-calls or texts, much less any subscribers that, "but for" the robo-calls/text messages, would not have met the usage requirements for the Lifeline Program.

### 2. Relators Do Not Allege With Particularity Any False Statement in Connection with Any Claim for Payment.

Even if Relators could prove that TruConnect violated certain Lifeline requirements, which, as demonstrated above, they cannot, Relators' SAC must be dismissed because it does not link any such violations to a claim for payment with the required specificity under Rule 9(b).

The FCA prohibits the making of false claims for payment to the government. *U.S. ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002). Submission of an actual false claim for payment is "the sine qua non" of an FCA violation.  *Cafasso*, 637 F.3d at 1055.  Therefore, "it is not enough for [Relators] 'to

describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted.'" *Kitsap Physicians Serv.*, 314 F.3d at 997 (quoting *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002)).  The False Claims Act ("FCA") is not "a vehicle for punishing garden-variety . . . regulatory violations." *Escobar*, 136 S.Ct. at 2003.  "Without the presentment of such a claim [for payment], while the practices of an entity that provides services to the Government may be unwise or improper, there is simply no actionable damage to the public fisc as required under the [FCA]." *Clausen*, 290 F.3d at 1311.

To meet the heighted pleading requirements of Rule 9(b), a relator pursuing a false certification theory "must plead with particularity allegations that provide a reasonable basis to infer that (1) the defendant explicitly undertook to comply with a law, rule or regulation that is implicated in submitting a claim for payment and that (2) claims were submitted (3) even though the defendant was not in compliance with that law, rule or regulation." *Ebeid*, 616 F.3d at 998.  Although a relator is not required to "identify representative examples of false claims to support every allegation," they must still allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.*

Relators fail to allege with Rule 9(b) particularity that TruConnect submitted any false claims for payment.  Indeed, the SAC does not identify even one specific claim for payment, much less that TruConnect submitted claims for payment for subscribers who purportedly violated any Lifeline Program requirements.  Relators make only the conclusory allegation that "[i]f TruConnect considers a phone 'active,' it will bill the government for that phone[,]" (SAC ¶ 83), and that TruConnect submits monthly FCC Form 497s for reimbursement under the Lifeline Program.  (*Id.* at 113.)  These bare assertions, without more, do not provide the "who, what, where, when, why and how" required under the heightened pleading standards.  *See, e.g.*,

*U.S. ex rel. Armstrong-Young v. Carelink Hospice Servs., Inc.*, No. 15-cv-04095, 2018 WL 4773111, at *3-4 (N.D. Cal. Oct. 1, 2018) (dismissing complaint for failure to satisfy 9(b) because relator failed to "provide a reasonable basis for [the court] to infer that claims had been submitted," in part because the relator had not "identif[ied] the submission of any particular" claim for payment.)

Relators' poorly-pled claims do no better under a theory that TruConnect violated the FCA by expressly certifying compliance with the Lifeline Program rules and regulations. "Violations of laws, rules or regulations alone do not create a cause of action under the FCA. It is the false certification of compliance which creates liability when certification is a prerequisite to obtaining a government benefit." *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996). Again, Relators claims fail to adequately allege the requisite ***falsity*** under the heightened pleading standards of Rule 9(b).

Relators allege that TruConnect violated the FCA by submitting a FCC Form 497 each month to receive reimbursement for the Lifeline Program, which requires a certification of compliance with the Lifeline Program rules. Relators allege that these certifications were false because TruConnect submits claims for unused phones and fails to "follow customer acquisition and reporting requirements." (SAC ¶ 117.) But Relators do not allege even one specific FCC Form 497 submitted by TruConnect, any specific subscribers included in or related to a FCC Form 497 submission who violated any Lifeline requirements (and remained uncorrected after TruConnect submitted any amendments thereto), or any connection between any FCC Form 497 and any claim for payment. Again, this simply is not enough to show the "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid*, 616 F.3d at 998.

### 3. Given the Government's Prior Knowledge and Continued Payment of Relators' Claims, Relators Cannot Plead that TruConnect *Knowingly* Presented a False Claim for Payment.

A person is liable under the FCA only if he or she (1) has actual knowledge of

the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1).  However, when, as here, the government authorizes payment on an allegedly "false claim" with knowledge of the facts underlying the alleged falsity, there is an inference that the defendant has not knowingly presented a false claim.  For example, in *United States ex rel. Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1050-51 (9th Cir. 2012), the Ninth Circuit affirmed the district court's dismissal of certain fraud claims regarding testing done for the Air Force because the Air Force was aware of and approved the testing methods.  *Id*.  In so holding, the Ninth Circuit explained that when the government has sufficient knowledge of an alleged fraud for it to take requisite action, and does not take any such action, the "defendant did not 'knowingly' submit a false claim and so did not have the intent required by the [] FCA."  *Id*. at 1051 (citing *U.S. ex rel. Hagood v. Sonoma Cnty. Water Agency*, 929 F.2d 1416, 1418–19, 1421 (9th Cir. 1991)); *see also Wang ex rel. U.S. v. FMC Corp.*, 975 F.2d 1412, 1421 (9th Cir. 1992), *overruled on other grounds by U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121 (9th Cir. 2015)) (because defendant had shared with the Army all the mistakes and limitations that were later the subject of Wang's FCA allegations, Wang failed to demonstrate intent).

Under *Hooper,* Relators have failed to allege that TruConnect "knowingly" submitted a false claim.  The government began investigating TruConnect's alleged conduct as early as 2015, when the FCC issued its first subpoena.  (RJN at Exh.1.) And it is undisputed that the government has been on notice of Relators' fraud allegations since at least May 2016, when Relators filed their complaint under seal. (Dkt. No. 1.)  The SAC, however, does not—and cannot—allege that the government stopped authorizing payments of the allegedly false claims, even after the government indisputably had sufficient knowledge of the alleged fraud for it to take requisite action.  Indeed, Relators make no allegations that the government has taken

any action to seek repayment of, of stop payment for, TruConnect's allegedly false claims during the four-plus years since the government has had knowledge of the alleged fraud.

Even if the government's prior knowledge was not fatal to Relators' ability to plead TruConnect's knowledge, Relators' conclusory allegations—that TruConnect "knowingly presented [] false or fraudulent claims for payment" or that TruConnect "knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim" (SAC ¶¶ 110, 122)—are not sufficient.  The plausibility standard set out in *Iqbal* and *Twombly* requires more than, as here, Relators' "legal conclusions and threadbare recitals of a cause of action."  *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998 (9th Cir. 2014) (quotation and citation omitted); see also *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

### 4.    Relators Have Not, And Cannot, Plausibly Plead that Any Allegedly False Statement or Record Was *Material* to the Submission of a Claim for Payment.

Even if Relators had adequately pled any underlying violations of the Lifeline Regulations, and even if they had adequately pled that TruConnect **knowingly** submitted false claims for payment (to which those purported violations were linked), the SAC would still be deficient because Relators fail to plead facts establishing that any purported violations of the Lifeline regulations would have been **material** to payment of such (unspecified) claims.  *See* 31 U.S.C. § 3729(b)(4); *Escobar*, 136 S.Ct. at 1996.  Under *Escobar*, to prove materiality Relators must allege facts showing that if the government had known of the alleged falsity, it would not have paid or, that after learning of the falsity, did not continue to pay.  *Id*. at 2003-04.  This materiality standard is "rigorous" and "demanding."  *Id*. at 1996, 2002–03, 2004 n.6.  Whether a relator has adequately pleaded materiality is appropriate for determination at the motion to dismiss stage.  *Id*. at 2004 n.6 ("False Claims Act plaintiffs must also

plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b) by, for instance, pleading facts to support allegations of materiality").

Facts supporting materiality can include "evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement." *Escobar*, 136 S.Ct. at 2003. In contrast, "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is ***very strong evidence that those requirements are not material***. Or, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is ***strong evidence that the requirements are not material*** . " *Id*. at 2003-04 (emphasis added).

Relators plead no facts that establish that the alleged violations of the Lifeline Regulations were material to payment under *Escobar*. For instance, Relators do not allege that the government "consistently refuses to pay" claims based on noncompliance with any specific Lifeline Regulation. *U.S. ex rel. Dresser v. Qualium Corp.*, No. 5:12-cv-01745-BLF, 2016 WL 3880763, at *6 (N.D. Cal. July 18, 2016). If anything, Relators' claims demonstrate the exact opposite: that the alleged violations of the Lifeline Regulations are ***not material.*** As explained above with respect to the SAC's failure to allege knowledge, the government has been on notice of the substance of Relators' allegations since at least May 2016, when Relators filed their initial complaint under seal (Dkt. No. 1), and likely before December 15, 2015, when the FCC issued its first subpoena. (RJN at Exh. 1.) After service of the 2015 Subpoena, the OIG of the FCC conducted a multiyear investigation from 2016-2018. After a full investigation, the United States declined to intervene on October 8, 2019 (Dkt. No. 54), and on May 19, 2020, the People of the State of California declined to intervene (Dkt. No. 59). Pointedly, Relators do not

allege that, after learning of the Relators' allegations and conducting its investigation, the government *ever* sought reimbursement of any sums from TruConnect relating to the challenged conduct, that the government stopped making Lifeline payments to TruConnect (in fact, it has not), or that the government otherwise materially changed its payment relationship with TruConnect in any way.  Absent such allegations, under *Escobar*, there is no basis to believe the alleged misconduct described in SAC is ***material*** to payment by the government.

Relators' SAC cannot be saved by their conclusory assertions that compliance with the Lifeline Regulations is "material to payment by the government," or that Defendants have "violated the material conditions of payment."  (SAC ¶¶ 93, 113, 119, 134, 140.)  Without more, these assertions are nothing more than a "[t]hreadbare recital of the [materiality] element[]," which is "supported by mere conclusory statement[s]."  *Ashcroft*, 556 U.S. at 678.  Absent any ***factual*** allegations establishing materiality, the SAC fails as a matter of law.  *See Knudsen v. Spring Comms. Co.*, Nos. C13-04476 CRB, C13-4465 CRB, C13-4542 CRB, 2016 WL 4548924, at *13 (N.D. Cal. Sept. 1, 2016) (dismissing complaint where relator failed to follow instructions outlined in *Escobar* for demonstrating materiality, and instead "only point[ed] to the regulations").

## B.    The Public Disclosure Bar Forecloses Relators' FCA Claims

The FCA's public disclosure bar prevents relators from bringing a "parasitic lawsuit[]," like this one, seeking to recover a bounty on behalf of the United States, based on allegations that were already publicly disclosed.  *U.S. ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 570 (9th Cir. 2016).  The Supreme Court has described the public disclosure bar as "broad" and "wide-reaching."  *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 408 (2011).  The public disclosure "need not contain an explicit 'allegation' of fraud, so long as the material elements of the allegedly fraudulent" conduct are disclosed in the public domain.  *U.S. ex rel. Found. Aiding The Elderly v. Horizon W.*, 265 F.3d 1011, 1014 (9th Cir. 2001), *opinion*

*amended on denial of re'g sub nom. U.S. ex rel. Found. Aiding Elderly v. Horizon W., Inc.*, 275 F.3d 1189 (9th Cir. 2001).  For a relator's allegations to be "based upon" a prior public disclosure, the allegations need only be substantially similar to the publicly disclosed allegations.  *U.S. ex rel. Solis v. Millennium Pharma., Inc.*, 885 F.3d 623, 626 (9th Cir. 2018).

In determining whether the bar applies, the ultimate question is whether the prior public disclosure was "sufficient" to "put the government on notice to investigate the alleged fraud before [the relator] filed his complaint." *U.S. ex rel. Fryberger v. Kiewit Pacific Co.*, 41 F. Supp. 3d 796, 803 (N.D. Cal. 2014); *Solis*, 885 F.3d at 627.  It is appropriate to consider the public disclosure bar on a motion to dismiss. *Prather v. AT&T, Inc.*, 847 F.3d 1097, 1102 (9th Cir. 2017) (finding that the 2010 amendments to the FCA made the public disclosure bar into a basis for dismissal for failure to state a claim).

### 1. The December 2015 FCC Subpoena and TruConnect's Response Thereto Constitutes a Prior Public Disclosure.

The public disclosure bar precludes claims based on allegations substantially similar to allegations presented in "Federal . . . audit[s], or investigations[.]" 31 U.S.C § 3730(e)(4)(A)(ii).  The Ninth Circuit has found that audits or investigations commenced by inspectors general of federal agencies are "paradigmatic examples" of such federal audits or investigations within the meaning of the public disclosure bar. *See U.S. ex rel. Fine v. Chevron Inc.*, 72 F.3d 740, 743 (9th Cir. 1995) (en banc); *U.S. ex rel. Rosales v. San Francisco Hous. Auth*, 173 F. Supp. 2d 987, 994 (N.D. Cal 2001).  Indeed, the Ninth Circuit held that the term "investigations" in 31 USC § 3730(e)(4)(A)(ii) includes not only administrative investigations but also encompasses *any* kind of government investigation – civil, criminal, administrative or any other kind.  *Seal 1 v. Seal 2*, 255 F.3d 1154, 1161 (9th Cir 2001) (investigations conducted by U.S. Attorney's Office and the Air Force Office of Special Investigations fell within the ambit of the public disclosure bar); *see also U.S.*

*ex rel. Mock v. Lockheed Martin Idaho Techs. Co.*, No. 96-0061-3-BLW, at *10 (D. Idaho Dec. 14, 2001) (federal agency audit, investigation, and environmental survey were "publicly disclosed.").

Relators' claims are precluded by the 2015 FCC Subpoena and TruConnect's responses thereto, which evidence a pre-existing investigation commenced by the Office of the Inspector General of the FCC.  This is a "paradigmatic example" of the types of audits or investigations that constitute a public disclosure under 31 U.S.C § 3730(e)(4)(A)(ii).  The core allegations in the SAC—that TruConnect's use of street teams to acquire Lifeline customers was "improper" and that TruConnect did not satisfy certain usage requirements—were explicitly addressed in the 2015 FCC Subpoena, which sought information, among other things, on (i) TruConnect's participation in the Lifeline Program, generally (*id.* at Reqs. 5, 6, 12, 13); (ii) TruConnect's *use of street teams* to procure Lifeline subscribers (*id.* at Reqs. 1-3, 8, 9, 10, 12); (iii) TruConnect's subscriber's *usage/failure to use* Lifeline wireless services (*id.* at Req. 5); (iv) TruConnect's submission of claims for payment for Lifeline subscribers (*id.* at Req. 7); and (v) any fraud, or investigation of fraud, in connection with TruConnect's participation in the Lifeline Program (*id.* at Reqs. 9-12).  The 2015 FCC Subpoena was served and responded to multiple times before Relators commenced this action in May 2016.  By its express terms, the 2015 FCC Subpoena (and TruConnect's responses thereto) establishes that there was a pre-existing government investigation of "the material elements of the allegedly fraudulent" conduct, that was more than sufficient to put the government "on notice to investigate the alleged fraud" later addressed by Relators in their May 2016 complaint.  *Kiewit Pacific Co.*, 41 F. Supp. 3d at 803.

### 2.   Relators Are Not Original Sources Within the Meaning of the FCA.

Relators may pursue their FCA claims, notwithstanding these prior public disclosures, if they can demonstrate that they qualify as an "original source."  31

U.S.C. § 3730(e)(4)(A).  The statute defines an original source as someone who "either (i) prior to public disclosure . . . has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or [(ii)] . . . has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and . . . has voluntarily provided the information to the Government before filing an action under this section."  *Id*. at § 3730(e)(4)(B).

There is no allegation that either Relator falls into the first category of original sources—individuals who provide information to the government before the public disclosures.  Indeed, the 2015 FCC Subpoena and TruConnect's responses thereto occurred months before Relators filed their initial complaint on May 31, 2016.  Relators allege no facts establishing that they disclosed any alleged misconduct to the government prior to the public disclosures, which extend back to at least 2015.  (RJN at Exh. 1.)

Nor do Relators' allegations establish that they had "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and . . . [have] voluntarily provided the information to the Government before filing an action."  31 U.S.C. § 3730(e)(4)(B)(ii).  Relators make no allegations that they voluntarily provided any information to the Government before the issuance of the 2015 FCC Subpoena—let alone before the filing of this action in May 2016—regarding the allegations or transactions upon which Relators' claims are based.  Accordingly, Relators cannot qualify as original sources, and thus, the public disclosure bar forecloses Relators' SAC.

**C.  Relators' Retaliation Claim Also Must Be Dismissed Under Rule 12(b)(6).**

To plead a retaliation claim under the FCA, Relators must allege three elements: (1) they were engaging in conduct protected by the FCA; (2) TruConnect *knew* they were engaging in protected conduct; and (3) TruConnect discriminated against them because of their protected conduct.  *Cafasso,* 637 F.3d at 1060.  The

1 SAC fails to plead any of these elements.

2     First, Relators' conduct is not protected because the activities they investigated
3 and complained of could not reasonably have led to a viable FCA action, as argued
4 above. *Hopper*, 91 F.3d at 1269 ("[T]he plaintiff must be investigating matters which
5 are calculated, or reasonably could lead, to a viable FCA action."); *Moore v. Cal.*
6 *Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002) ( "[A]n
7 employee engages in protected activity where (1) the employee in good faith
8 believes, and (2) a reasonable employee in the same or similar circumstances might
9 believe, that the employer is possibly committing fraud against the government.").
10 Without pleading an objectively reasonable FCA violation, there is no protected
11 activity, and thus no claim for retaliation. *U.S. ex rel. Zemplenyi v. Grp. Health Co-*
12 *op.*, No. 09-603-RSM, 2012 WL 1642213, *3 (W.D. Wash. May 10, 2012) (eye
13 doctor had no retaliation claim based on employer's alleged scheme to defraud
14 Medicare because she failed to plead an objectively reasonable FCA violation).

15     Second, Relators fail to plead facts sufficient to show that TruConnect knew
16 they were engaged in protected activity – they cannot because their conduct was not
17 protected. Indeed, Relators simply allege that "on July 22, 2015, the Relators
18 approached Rick Berger [Vice President of Revenue Assurance at TruConnect] with
19 their concerns about Lifeline's subscriber data usage," and that, "Berger confirmed
20 that TruConnect bills the government for subscribers with one minute of usage."
21 (SAC ¶ 105.) Without more, these allegations do not show that Relators disclosed to
22 TruConnect that they engaged in protected activities, much less that TruConnect
23 *knew* Relators were engaged in such protected activities.

24     Third, Relators fail to plead facts sufficient to show that TruConnect
25 discriminated against them because of their protected conduct. Because TruConnect
26 had no knowledge of their "protected conduct," it couldn't have discriminated against
27 Relators. And even if Relators *were* engaged in protected conduct and TruConnect
28 *knew* about it, Relators fail to adequately plead that their termination was a result of

3670824

1 discrimination because of their protected conduct, given that Relators admit

2 TruConnect was simultaneously going through a reduction in force.  (SAC ¶ 108.)

### D.   Relators' State Law Claims Must Be Dismissed.

#### 1.   Relators' California FCA Claims (Counts 3, 4 and 6) Fail Under Rule 9(b).

"Rule 9(b)'s particularity requirement applies to state-law causes of action."

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).  The state law

claims set forth in the SAC are largely legal conclusions and add no substantive

allegations, but rather repeat and reallege the allegations underlying the federal FCA

counts.  (*See, e.g.*, SAC ¶¶ 130-150, 158-164.)  This does not satisfy Rule 9(b), so the

claims should be dismissed.

#### 2.   Dismissal of Relators' FCA Claims Requires Dismissal of All State Law Claims.

Because Relators have failed to state viable FCA claims, the Court should

decline to exercise supplemental jurisdiction over the pendent state law claims under

California's FCA and alleging a California Labor Code violation.  *United Mine*

*Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are

dismissed before trial . . . the state claims should be dismissed as well."); *Sanford v.*

*MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting *Carnegie–Mellon*

*Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)) ("In the usual case in which all

federal-law claims are eliminated before trial, the balance of factors to be considered

under the pendent jurisdiction doctrine—judicial economy, convenience, fairness,

and comity—will point toward declining to exercise jurisdiction over the remaining

state-law claims.").

### E.   Leave to Amend Should Be Denied.

The Court's discretion to deny leave to amend is "particularly broad" for cases

in which the plaintiffs previously have amended their complaints, and the Court may

dismiss a complaint with prejudice due to "futility of amendment." *Zucco Partners,*

*LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (quotation and citation

33

1  omitted).  Because providing Relators another opportunity to amend their complaint

2  would be futile, the Court should dismiss the SAC with prejudice.

3       More than four years after filing their original complaint, Relators have filed a

4  second amended complaint that still lacks the particularity required under Rule 9(b),

5  and fails to meet the plausibility requirement of Rule 8(a).  Relators' SAC remains

6  woefully deficient after three attempts, and it should be dismissed with prejudice.

7  *Brown v. Carrington Mortg. Servs., LLC*, No. 12-6974-PA-MRW, 2013 WL

8  1196868, *2-4 (C.D. Cal. Mar. 25, 2013) (granting defendant's motion to dismiss

9  fraud claim without leave to amend).  There is no evidence to suggest that Relators

10  could cure the multiple deficiencies in their SAC if given the opportunity to file a

11  fourth time.  *Zucco Partners,* 552 F.3d at 1007.  Thus, the Court should exercise its

12  broad discretion and dismiss Relators' SAC with prejudice.

13  **V.     CONCLUSION**

14       For the reasons explained above, the Court should dismiss Relators' SAC with

15  prejudice pursuant to Rule 12(b)(6), Rule 9(b), and Rule 8.

16

17  DATED:  October 2, 2020          Benjamin N. Gluck

18                                   Paul S. Chan
                                     Julia B. Cherlow

19                                   Bird, Marella, Boxer, Wolpert, Nessim,

20                                   Drooks, Lincenberg & Rhow, P.C.

21

22                                   By:      /s/ Paul S. Chan

23                                            Paul S. Chan

24                                   Attorneys for Defendants TruConnect
                                     Communications, Inc., Matthew Johnson

25                                   and Nathan Johnson

26

27

28