Kelli D. Burritt, Esq. SBN 192397
kelli@wmlawyers.com
**WINER, BURRITT & TILLIS LLP**
21700 Oxnard, Suite 2070
Woodland Hills, California 91367
Telephone: (818) 697-6201
Fax: (877) 641-0824

Brian P. Sanford, Esq., Pro Hac Vice, Tex. SBN 17630700
bsanford@sanfordfirm.com
David B. Norris, Esq., Pro Hac Vice, Tex. SBN 24060934
dnorris@sanfordfirm.com
**THE SANFORD FIRM**
1910 Pacific Avenue, Suite 15400
Dallas, Texas 75201
Tel (214) 717-6653
Fax (214) 919-0113

Attorneys for Plaintiffs/Relators

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| United States of America and the State of California *ex rel*, Regie Salgado and Melinda Zambrano,<br><br>    Plaintiffs/Relators,<br><br>v.<br><br>TruConnect, Matthew Johnson, and Nathan Johnson,<br><br>    Defendants. | Case No. CV16-03767 PSG (FFMx)<br><br>**RESPONSE TO MOTION TO DISMISS**<br><br>Pursuant to 31 U.S.C. § 3729 *et seq.,* the California False Claims Act, Cal. Gov't code § 12650 *et seq.*, and the Common Law of California<br><br>JURY TRIAL DEMANDED |

## Procedural History

On May 31, 2016, qui tam relators Regie Salgado and Melinda Zambrano (collectively, "Relators"), by and through their attorneys, individually and on behalf of the United States of America and the state of California filed an original complaint under seal against TruConnect, Matthew Johnson, and Nathan Johnson to recover damages, penalties, and attorneys' fees for multiple violations of the federal False Claims Act, 31 U.S.C §§ 3729 *et seq.* and § 3730(h), the California False Claims Act, Cal. Gov't Code § 12651 and § 12653, and wrongful discharge in violation of California public policy. (Dkt. No. 1).

On June 29, 2016, relators filed a First Amended Complaint under seal virtually identical to the Original Complaint. (Dkt. No. 38). On October 8, 2019, the United States filed a notice of election to decline to intervene in the case, reserving its right to intervene at a later date.(Dkt. No. 54). On May 19, 2020, the State of California declined to intervene while also reserving the right to intervene at a later date. (Dkt. No. 54).

On June 25, 2020, relators filed a Second Amended Complaint before serving the defendants for the first time. (Dkt. No. 60). The Second Amended Complaint is virtually identical to the original complaint with the exception of change in counsel.

Defendants appeared in the action and filed a motion to dismiss to the Second Amended Complaint. (Dkt. No. 65).

## Argument and Authorities

**A. The Standard for Motion to Dismiss.**

A plaintiff's pleading is to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

- 2 -

accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal,* 556 U.S., at 678–79. The Court assumes the veracity of well-pleaded allegations and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

Legal conclusions can provide "the framework" of a complaint, but must be supported by factual allegations. *Iqbal,* 556 U.S., at 679. The task is to "suggest that the claim has at least a plausible chance of success." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013). "The level of factual specificity needed to satisfy this pleading requirement will vary depending on the context." *Id.*

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To plead fraud with particularity, the pleader must state the time, place, and specific content of the false representations. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007).

The allegations "must set forth more than neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about the statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). In essence, the defendant must be able to prepare an adequate answer to the allegations of fraud. *United States ex rel. Tutanes-Luster v. Broker Sols., Inc.*, CV191630PSGJPRX, 2019 WL 6972689, at *7 (C.D. Cal. July 8, 2019).

To satisfy the "the who, what, when, where, and how" of the misconduct charged, a relator can "identify representative examples of false claims" or, alternatively, allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998-99 (9th Cir. 2010).

**B. The complaint alleges facts specific enough to allow a defense.**

The Second Amended Complaint (SAC) alleges detailed facts, statutes, and regulations in 176 numbered paragraphs. (Dkt. No. 60). Although the complaint provides much more detail, the essence of the claims can be described in the who, what, when, where, and how of the misconduct charged.

**1.    The Who.**

The complaint alleges that TruConnect is a Lifeline Provider of mobile wireless services in a program which State and Federal government programs subsidize cellular service for low income families. (SAC ¶¶23, 26). Matthew Johnson and Nathan Johnson are brothers and joint CEOs of TruConnect and exercise comprehensive control over the company, including its billing practices. (SAC ¶28)

**2.     The What.**

The complaint alleges that under the direction of Matthew Johnson and Nathan Johnson from their Los Angeles office, TruConnect has and continues to falsely bill the government for phones not in use and falsely represents that it complies with the Lifeline regulations set out by the FCC. (SAC ¶30). Under the regulations, TruConnect cannot seek reimbursement for service to a prospective subscriber for another subscriber at the same residential address. (SAC ¶40). Additionally, for TruConnect to be reimbursed by the government, a phone must be used by a subscriber. (SAC ¶42). Usage depends on sufficient activity during a 60-day period. (SAC ¶43). The complaint alleges TruConnect falsely submitted bills and certified compliance with all Lifeline program rules. (SAC ¶10, 12, 13)**.**

**3.     The Where.**

TruConnect is headquartered in California and made the false claims under the Lifeline program in California. (SAC ¶24, 51)**.**

**4.     The When.**

The fraud was discovered in 2015. (SAC ¶20, 21 )**.** The fraudulent billing occurred over a year period prior to the discovery and is alleged to be continuing. (SAC ¶30, 54, 82). The 38 days of data supports the fraud, however, the actual knowledge of the fraud from examination while relators were employed with TruConnect is of data showing fraud over a year. (SAC ¶82).

**5.     The How.**

TruConnect hired "street teams" to hand out mobile phones outside places such as Unemployment Insurance offices and Social Security offices. (SAC ¶63). The street teams do not follow Lifeline certification regulations verifying facts such as residence address, number of people in a household, or income. (SAC ¶66). TruConnect does not turn off unused phones as required by FCC guidelines and allows robo-calls and text messages to be pumped to the phones to show fraudulent

- 5 -

usage. (SAC ¶70). Salgado, a relator, investigated some of the phones for fraudulent usage, as well as data of 60,000 Lifeline subscribers of TruConnect. (SAC ¶82). Analyzing over a year's worth of data, Salgado found and confirmed billing for fraudulent usage by TruConnect. (SAC ¶82-92, 105-06).

Identifying the use of "street teams," robo-calls, text messages, and manufactured or unsubstantiated usage are actual examples of specific facts that provide details to the underlying claims of fraud. Further factual support is given by the analysis of over a year of data, with facts showing billing fraud confirmed by an officer of TruConnect. These facts are sufficient to place Defendants on notice of the claims.

### C. The complaint alleges the knowing presentation of false claims.

Relators specifically allege that the Defendants knowingly submitted numerous fraudulent usage minutes in billing the government to collect false payment for defunct phones. (SAC ¶13, 110, 118, 122, 126, 131, 139, 143, and 147). Although relators do not attach any specific invoice, they have knowledge of the billing practices and fraud by Defendants as former employees, from investigations while employed by TruConnect, and from admissions of officers of TruConnect. (SAC ¶5, 11, 22, 90, 150, 106, 152). Defendants do not present any direct evidence that any government entity had knowledge of the claims. Indeed, as shown by recent data requests, the California Public Utility Commission continues to be interested in relators' fraud claim although it declines to intervene at this time. (Ex. A). The data requests are further evidence that a finding has not been made exonerating Defendants of any fraud.

### D. The complaint alleges false statements or record that was material.

Relators specifically allege that complying with the applicable regulations is material to payment by the government and that claims for payment are materially false when information submitted on government forms has been fraudulently

obtained or does not abide by Lifeline regulations. (SAC ¶93). Relators allege that Defendants violated material conditions of payment to the Lifeline program and that claims submitted by TruConnect are material to the government's decision on whether, and how much, to reimburse TruConnect. (SAC ¶113, 119). Relators allege that a statement material to a false or fraudulent claim violated the False Claims Act and California Government Code with usage reports material to Defendants' false claims. (SAC ¶122, 127, 134, 140, and 143).

### E. Defendants do not have conclusive evidence of public disclosure.

Section 3730(e)(4)(A) provides that a court shall dismiss an action, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action were publicly disclosed, such as in a civil or administrative hearing, or government audit or investigation. 31 U.S.C. § 3730(e)(4)(A). Defendants do not provide any direct evidence of public disclosure of the claims involving the same allegations or transaction as alleged in relators' complaint. Defendants do not provide any evidence of any public disclosure of any elements of any fraud.

The cases cited by Defendants are distinguishable. In *U.S. ex rel. Fine v Chevron, U.S.A., Inc.*, a former employee of the Office of the Inspector General at the U.S. Department of Energy, brought multiple qui tam actions that this department refused to pursue while he was employed. *U.S. ex rel. Fine v. Chevron, U.S.A., Inc.*, 72 F.3d 740, 741 (9th Cir. 1995). The former government employee conceded that he could not maintain the actions if he did not qualify as an "original source." *Id.* The Ninth Circuit clearly established that the former employee did not have "independent knowledge" of the information outside of this role as a government official. *Id.* at 743. Neither Zambrano nor Salgado were government employees. They worked for a private company and are "whistleblowing insider[s]" that the Ninth Circuit opined are the paradigm *qui tam* plaintiffs. *Id.* at

742. The court also emphasizes that legislative history of the False Claims Act is to encourage more private enforcement of suit. *Id*.

The decision in *U.S. ex rel. Rosales v. San Francisco Hous. Auth.,* is another case regarding the qualifications of an "original source," which is not an issue in relators' case. *U.S. ex rel. Rosales v. San Francisco Hous. Auth.*, 173 F. Supp. 2d 987, 994 (N.D. Cal. 2001).

The Court in *Seal 1 .v. Seal 2* found that disclosure of information to one member of the public does not qualify as "public disclosure" to a member of the public "who independently comes upon information already possessed by the government…and then files an FCA action based on the information independently obtained." *Seal 1 v. Seal 2*, 255 F.3d 1154, 1162 (9th Cir. 2001). Relators were unaware of any alleged investigation by the FCC.

The FCA's public disclosure bar is triggered only if three conditions are met: (1) the disclosure occurred through one of the channels specified in the statute, (2) the disclosure was "public," and (3) the lawsuit is "based upon" the allegations or transactions publicly disclosed. *United States ex rel. Solis v. Millennium Pharms., Inc.*, 885 F.3d 623, 626 (9th Cir. 2018). The public disclosure bar is an affirmative defense. *Prather v. AT&T, Inc.*, 847 F.3d 1097, 1103 (9th Cir. 2017). The Court may consider it on a motion to dismiss only when the allegations in the complaint or materials that are subject to judicial notice are sufficient to establish the defense. *See Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013); *United States ex rel. Integra Med Analytics LLC v. Providence Health & Services*, CV 17-1694 PSG (SSX), 2019 WL 3282619, at *5 (C.D. Cal. July 16, 2019), motion to certify appeal granted, CV 17-1694 PSG (SSX), 2019 WL 6973547 (C.D. Cal. Oct. 8, 2019).

Defendants allege that a public disclosure had been made because it received subpoenas; however, the mere receipt of subpoenas does not necessarily disclose

any report or investigation of fraud, let alone the same fraud as alleged by relators. Defendants do not disclose their response to the subpoenas. Further, Defendants repeatedly requested the government to keep the response to the subpoenas confidential from the public. (Dkt. No. 65-2, pp. 32, 34, 35, 37, 38, 40, 41, 43, 44, 85, 86, 88, 89, 91, 94, 97, 100, 101). Defendants do not allege that relators participated or knew of the subpoenas or any alleged investigation that might have been performed by the FCC, or that relators are taking a free ride on a government investigation of which they were somehow aware. Defendants have provided no conclusive factual basis that an investigation of the claims made by relators had been part of any prior investigation, audit, or administrative proceeding.

Neither the cover letter from the FCC nor the subpoenas identify a proceeding or an investigation matter. (Dkt. No. 65-2). Defendants have not alleged any actual findings or reports of fraud. Accordingly, Defendants have not alleged facts sufficient to subject to judicial notice that are sufficient to establish the affirmative defense of public disclosure.

### F. Plaintiffs allege sufficient facts of retaliation.

Plaintiffs alleged that they engaged in protected activity when they reported to company leadership their concerns of fraud. (SAC ¶155). Plaintiffs' allegation of complaints to superiors would have put TruConnect on notice that plaintiffs were engaged in efforts motivated by an objectively reasonable belief that TruConnect was possibly committing fraud against the government. *See Lillie v. ManTech Int'l. Corp.,* No. 217CV02538CASSSX, 2017 WL 3498618, at *4 (C.D. Cal. Aug. 14, 2017).

Relators suffered adverse employment action two days later, very close temporal proximity. (SAC ¶156). Proximity in time between the protected action and the allegedly retaliatory employment decision is one way a jury logically could infer that the plaintiffs were terminated in retaliation. *See Dawson v. Entek Int'l*,

630 F.3d 928, 937 (9th Cir. 2011). In some cases, temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation for purposes of both the prima facie case and the showing of pretext. *See Bell v. Clackamas County,* 341 F.3d 858, 865–66 (9th Cir. 2003); *Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 731–32 (9th Cir. 1986).

### G. Plaintiffs allege sufficient facts of state law claims.

Defendants rely on dismissal of the federal claims as a basis for the state law claims. For the same reasons that the federal claims should not be dismissed, relators assert that the state law claims should not be dismissed.

### H. Relators alternatively request to amend again.

The motion to dismiss should be denied. In the event the Court determines that deficiencies remain in the Second Amended Complaint, relators request leave to amend again to correct any deficiencies. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (per curium) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). The Court, however, may deny leave to amend if plaintiff has repeatedly failed to cure deficiencies or if amendment would be futile. *See Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041–42 (9th Cir. 2015). Relators have not been placed on prior notice of any previous deficiencies which have not been cured. This is the first motion to dismiss. Should the motion be granted in whole or in part, leave should be granted to amend to cure any deficiencies.

WHEREFORE, Relators request the Court to deny the motion to dismiss, or alternatively, to allow an amendment.

Respectfully submitted,

By:    /s_*Brian P. Sanford*
Brian P. Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com
David B. Norris
Texas Bar No. 24060934
dnorris@sanfordfirm.com

**THE SANFORD FIRM**
1910 Pacific Ave., Suite 15400
Dallas, TX 75201
Telephone: (214) 717-6653
Fax: (214) 919-0113

Kelli D. Burritt, Esq.
California Bar No. 192397
kelli@wmlawyers.com
**WINER, BURRITT & TILLIS LLP**
21700 Oxnard, Suite 2070
Woodland Hills, California 91367
Telephone: (818) 697-6201
Fax: (877) 641-0824

Attorneys for Plaintiffs/Relators